# IN THE SUPREME COURT OF IOWA

No. 42 / 05-1625

Filed November 16, 2007

**STATE OF IOWA**,

    Appellee,

vs.

**DAVID MICHAEL BOGGS**,

    Appellant.

---

Appeal from the Iowa District Court for Cass County, James M. Richardson, Judge.

Defendant appeals conviction for possession of methamphetamine with intent to deliver. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, and Daniel Feistner, County Attorney, for appellee.

**CADY, Justice.**

In this appeal, we must interpret a statutory provision relating to double jeopardy to determine if a defendant can be subjected to a retrial for a greater offense after reversal of a conviction for a lesser offense, when the greater offense was originally charged but dismissed during the first prosecution as part of an agreement between the parties in which the defendant waived a jury trial and agreed to a trial on the minutes of testimony on the lesser offense. On our review of this issue, as well as the other claims raised on appeal, we affirm the judgment and sentence of the district court.

## I.  Background Facts and Proceedings.

The relevant facts of this case date back to January 10, 2003, when law enforcement officers executed a search warrant at the residence of David Boggs in Atlantic, Iowa. The officers suspected Boggs was engaged in drug dealing and obtained a search warrant after gathering incriminating evidence from the trash left outside the residence. After entering the residence, officers discovered Boggs seated at a desk in a room of the basement. He was startled by their unsuspected entry into the room. A large quantity of methamphetamine could be observed on the desk, and Boggs was dividing it into smaller quantities with the aid of his driver's license. There was also a chunk of methamphetamine in a plastic bag located on the desk. The quantity of methamphetamine in the bag was consistent with an amount frequently sold by drug dealers, known as an "eight ball." Officers also observed numerous accoutrements of drug use and dealing, including a razor blade, burnt foil, rolling papers, duct-taped pouch, and digital scale. There was also a bong and a "snort tube" in the area. Boggs had thirty-nine, twenty-dollar bills in his wallet. Surveillance cameras were located outside the house that allowed the occupants to

monitor activities outside the house on a television screen. A stash of marijuana and another bong were located in a nearby bedroom that Boggs shared with a woman.

One chunk of methamphetamine found on the desk weighed 58.66 grams. The estimated street value of the methamphetamine was in excess of $6000. The "eight ball" found in the plastic bag weighed 3.25 grams. The stashes of marijuana in the bedroom weighed 7.30 grams, 2.52 grams, and 1.02 grams.

Boggs was arrested and transported to jail. He was given his *Miranda* rights and signed a written waiver of those rights. During the course of a subsequent interview by an officer, Boggs acknowledged ownership of the methamphetamine and marijuana found in the basement. He said he obtained the methamphetamine from a person in Council Bluffs. There were also discussions between Boggs and the officer during the interview about a possible plea agreement in exchange for helpful information, and the officer spoke to the county attorney on the telephone. However, a plea bargain never materialized.

Boggs was later charged by a two-count trial information. Count I charged Boggs with possession of marijuana in violation of Iowa Code section 124.401(5) (2001). Count II charged Boggs with possession of methamphetamine (more than five grams) with intent to deliver and within 1000 feet of a public park, a class "B" felony, enhanced as a second or subsequent offender in violation of sections 124.401(1)(*b*)(7), 124.401A, and 124.411.

Boggs eventually accepted an offer by the State to dismiss the charge of possession of marijuana and reduce Count II of the trial information to charge possession of methamphetamine (less than ten grams) with intent to deliver, a class "C" felony, enhanced as a second or subsequent offender. In

return, Boggs agreed to waive a jury trial and be tried to the court on the minutes of testimony. The parties contemplated this procedure would preserve Boggs' right to appeal three claims of error: a ruling by the district court on a motion to suppress, rulings by the trial court on his request for self-representation, and the sufficiency of evidence to support a finding of guilt.

At the trial on the minutes of testimony, the district court briefly questioned Boggs about the agreement before finding him guilty of the charge in the amended trial information. Boggs was then sentenced to a term of incarceration not to exceed thirty years and was fined in the amount of $1000. He filed a timely notice of appeal.

During the pendency of the appeal, the State moved for summary reversal of the judgment and sentence. We granted the motion and remanded the case for a new trial, based on a finding that the record in the case revealed the district court failed to make a valid inquiry into Boggs' request to waive counsel and represent himself.

On remand, the State sought to pursue the original class "B" felony charge of possession with intent to deliver methamphetamine. Boggs filed a pretrial motion and claimed a new trial on the original charge under Count II would violate the double jeopardy provisions of Iowa Code section 811.3(3) because the crime of conviction from the first trial was a lesser included offense of the original class "B" possession of methamphetamine with intent to deliver charge. The district court overruled Boggs' motion, and the case proceeded to a jury trial on the original charges.

The officers who executed the search warrant and interviewed Boggs after his arrest testified at trial. This testimony revealed Boggs was discovered cutting methamphetamine into saleable quantities in a room in his residence set up for that purpose. It also revealed Boggs admitted

ownership of the drugs after his arrest. Defense counsel objected to the admissions, claiming they were inadmissible plea negotiations. To support the objection, defense counsel conducted a voir dire examination of the officer who interviewed Boggs, but the questioning failed to elicit any facts to show the admissions were made in conjunction with the plea discussions. The State presented other evidence of guilt and later submitted evidence of Boggs' prior drug convictions to support the repeat-offender element of the charge.

Following the submission of the evidence at the trial, the district court instructed the jury. One instruction informed the jury how to consider evidence of Boggs' character and reputation for drug use. This instruction told the jury they could consider Boggs' "good character or reputation" in determining the probability or lack of probability of his guilt of the crime. Defense counsel failed to object to the instruction, even though Boggs never introduced any evidence of his good character.

During closing arguments, the prosecutor repeatedly mentioned the charge of possession of methamphetamine with intent to deliver in the context of the "community" and the distribution of drugs into the "community." In response to defense testimony at trial that contradicted some of the testimony of the officers who had testified at trial, the prosecutor also told the jury the officers had no reason to lie, and they told the truth.

The jury found Boggs guilty of possession of marijuana and possession of methamphetamine with intent to deliver, as charged in the original indictment.

Prior to sentencing, trial counsel for Boggs filed a motion to withdraw. This occurred after Boggs filed a statement with the district court listing his claims of ineffective assistance of counsel. The district court questioned

Boggs and his attorney before ruling on the motion. Boggs told the court it did not "really matter" to him if trial counsel continued to represent him. However, trial counsel expressed his belief that he was no longer able to zealously represent Boggs or speak on his behalf at sentencing due to his complaints of ineffective assistance of counsel. The district court overruled the motion, and the case proceeded to sentencing. The district court sentenced Boggs to an indeterminate term of imprisonment not to exceed seventy-five years, with a mandatory one-third minimum period of confinement and a fine of $15,000. Prior to pronouncing sentence, the court gave Boggs and his attorney an opportunity to speak. Boggs submitted a written statement in mitigation of punishment, as well as a letter of support and other written documentation of mitigation. Counsel for Boggs only reiterated his belief that it was "not appropriate" to address the court.

On appeal, Boggs raises four grounds of error. First, he claims it was error to be reprosecuted on the original charge following the reversal of his original conviction. Second, he claims the district court erred in admitting his incriminating statements made to police. Third, he claims the district court erred by failing to appoint substitute counsel at the sentencing hearing. Finally, he claims trial court provided ineffective assistance during the trial.

## II.  Standard of Review.

The district court's interpretation of a statute must be reviewed for errors at law. Iowa R. App. P. 6.4; *State v. Francois*, 577 N.W.2d 417, 417 (Iowa 1998) ("We review the trial court's interpretation of statutes for errors of law."). To the extent Boggs raises constitutional questions, our review is de novo. *Taylor v. State*, 351 N.W.2d 532, 535 (Iowa 1985). We review claims of ineffective assistance of counsel de novo. *State v. Tejeda*, 677

N.W.2d 744, 753 (Iowa 2004). We normally review claims of error in the admission of evidence for abuse of discretion. *State v. Rodriguez*, 636 N.W.2d 234, 239 (Iowa 2001). However, when admission of evidence turns on interpretation of a statute, we review for errors of law. *State v. Kjos*, 524 N.W.2d 195, 196 (Iowa 1994).

### III. Double Jeopardy.

The right to be free from double jeopardy is rooted deeply in our common law and assumes a familiar and prominent position in our state and federal constitutions. *See generally* Jay A. Sigler, *Double Jeopardy* 1–37 (1969) (tracing history of the double jeopardy doctrine); *Benton v. Maryland*, 395 U.S. 784, 795–96, 89 S. Ct. 2056, 2063, 23 L. Ed. 2d 707, 716 (1969) (noting the guarantee against double jeopardy "can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence"). The Fifth Amendment of the United States Constitution declares no person may be "subject for the same offense to be twice put in jeopardy of life or limb." Similarly, the Iowa Constitution provides a person may not be tried for the same offense "after acquittal." Art. I, § 12. Generally, the double jeopardy principle protects persons "from prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense." *State v. Burgess*, 639 N.W.2d 564, 568 (Iowa 2001). It "serves 'a constitutional policy of finality for the defendant's benefit.' " *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225, 53 L. Ed. 2d 187, 194 (1977) (quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S. Ct. 547, 554, 27 L. Ed. 2d 543, 553 (1971)).

While the principles of double jeopardy are etched into our federal and state constitutions, our legislature has chosen to separately define double jeopardy protections and exceptions by statute. *See* Iowa Code ch. 816 (entitled "Double Jeopardy."). States are not only permitted to enact

statutes that are consistent with constitutional principles, they may also define greater rights than provided by the federal and state constitution. *See Peel v. Burk*, 197 N.W.2d 617, 619 (Iowa 1972) ("The legislature may enact any law providing it is not prohibited by some provision of the state or federal constitutions."). Thus, the question we face in this case is whether Iowa has defined additional rights under its statute.

Generally, Iowa's double jeopardy statute establishes two rules that bar retrial after a conviction or acquittal, followed by three exceptions or limitations to the bar to retrial, and concludes with a procedural rule governing a plea of former conviction or acquittal. *See* Iowa Code §§ 816.1–.4. The first statutory rule bars a second prosecution for the same offense following a conviction or acquittal. *Id.* § 816.1. The second rule bars a second indictment for the same offense previously charged or any lesser degree of the offense, or for an included offense, when the defendant is convicted or acquitted of an indictment or an offense consisting of different degrees. *Id.* § 816.2. The specific section of the statute at issue in this case is the third exception. It provides:

> A prosecution is not barred . . .
>
> 3. If subsequent proceedings resulted in the invalidation, setting aside, reversal or vacating of the conviction, unless the defendant was adjudged not guilty; but in no case where a conviction for a lesser included crime has been invalidated, set aside, reversed or vacated shall the defendant be subsequently prosecuted for a higher degree of the crime for which the defendant was originally convicted.

*Id.* § 816.3.

Thus, the exception has two components that govern retrial when a conviction is set aside or otherwise reversed. First, the exception declares a defendant may be prosecuted after a conviction has been invalidated, set aside, reversed, or vacated unless the defendant was adjudicated not guilty.

Second, the exception is subject to a qualification that in no event may a defendant be "prosecuted for a higher degree of the crime for which the defendant was originally convicted" when "a conviction for a lesser included crime has been invalidated, set aside, reversed or vacated."

The exception comports with the long-standing, judicially recognized principle first announced by the United States Supreme Court in *Ball v. United States,* 163 U.S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896), that double jeopardy under the Constitution does not normally prohibit the retrial of a defendant whose conviction has been set aside or reversed on appeal because of an error in the trial proceedings. *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S. Ct. 285, 289, 102 L. Ed. 2d 265, 272 (1988); *State v. Swartz,* 541 N.W.2d 533, 537 (Iowa Ct. App. 1995). The rationale for this rule ultimately rests on "the premise that the original conviction has . . . been wholly nullified and the slate wiped clean." *North Carolina v. Pearce,* 395 U.S. 711, 721, 89 S. Ct. 2072, 2078, 23 L. Ed. 2d 656, 667 (1969). Viewed another way, the jeopardy attached to the original conviction continues through the retrial, and consequently, there is no second jeopardy to attach on retrial. *Green v. United States*, 355 U.S. 184, 189, 78 S. Ct. 221, 224, 2 L. Ed. 2d 199 (1957). In addition to these constitutionally based theories that permit retrial, the exception is also justified by the important public policy of the "sound administration of justice." *United States v. Tateo*, 377 U.S. 463, 466, 84 S. Ct. 1587, 1589, 12 L. Ed. 2d 448, 451 (1964). In *Tateo*, the Supreme Court explained this important public policy behind the *Ball* principle as follows:

> Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From

the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

*Id.*

Thus, based on these reasons, it has been well-settled law, at least since 1896, that the double jeopardy bar to retrial following a conviction does not normally apply to a reversal of a conviction on appeal. *Pearce*, 395 U.S. at 719–20, 89 S. Ct. at 2077–78, 23 L. Ed. 2d at 666. Of course, this principle, as with Iowa's statutory exception at issue in this case, does not apply when the conviction was invalidated or reversed on grounds of insufficient evidence because such a ground for reversal is equivalent to an adjudication of not guilty. *United States v. DeFrancesco*, 449 U.S. 117, 131, 101 S. Ct. 426, 434, 66 L. Ed. 2d 328, 341 (1980); *Swartz*, 541 N.W.2d at 537; *see also* Iowa Code § 816.3(3) (retrial following reversal of conviction on appeal not barred by double jeopardy "unless the defendant was adjudged not guilty"). Thus, the statutory exception does not define any greater rights than those currently derived from our federal and state constitutions. Instead, it reiterates existing constitutionally based rules.

The qualification to the exception enunciated in section 816.3(3) also appears to be aligned with constitutional principles of double jeopardy. While the *Ball* principle or exception has dominated the double jeopardy landscape for over a century, it was crafted in the context of a retrial of the same charge as in the prior conviction. In that context, both the Constitution and public policy permit retrial of a defendant whose first conviction was set aside or reversed. However, in *Green v. United States*, 355 U.S. 184, 189, 78 S. Ct. 221, 224, 2 L. Ed. 2d 199, 205 (1957), the Supreme Court qualified the *Ball* principle. It held *Ball* did not apply to a

retrial of a greater crime following the conviction of a crime in the first trial, which was set aside or reversed. *Green*, 355 U.S. at 189, 78 S. Ct. at 224, 2 L. Ed. 2d at 205.

In *Green*, the defendant was indicted and tried on separate counts of arson and murder in the first degree. *Id.* at 185, 78 S. Ct. at 222, 2 L. Ed. 2d at 203. The first-degree murder count included the lesser offense of second-degree murder. *Id.* at 185–86, 78 S. Ct. at 222–23, 2 L. Ed. 2d at 203. The jury found Green guilty of arson and second-degree murder. *Id.* at 185, 78 S. Ct. at 223, 2 L. Ed. 2d at 203. The second-degree murder conviction was later reversed on appeal. *Id.* Green was tried again, over his objection, on the first-degree murder count, and the second trial resulted in a conviction of murder in the first degree. *Id.* The Court distinguished the case from the *Ball* situation by emphasizing that Green was not retried "for second degree murder, but for first degree murder, even though the original jury had refused to find him guilty on that charge." *Id.* at 190, 78 S. Ct. at 225, 2 L. Ed. 2d at 205. Double jeopardy was violated because the jury's refusal to convict Green of first-degree murder in the first trial was an "implicit acquittal" of the charge. *Id.* Green was placed in direct jeopardy of a conviction for first-degree murder in the first trial, and the jury refused to convict him. *Id.* This qualification to the *Ball* principle recognized in *Green* has also been long recognized in Iowa. *State v. Smith*, 217 Iowa 825, 826, 253 N.W. 130, 131 (1934).

This background reveals two important conclusions. First, Iowa's statutory exception to the rule barring retrials echoes the long-standing judicially crafted exception. Second, the judicially crafted double jeopardy exception has been qualified in those cases involving the retrial of a greater offense, as with the statutory exception. Importantly, the judicial qualification of the exception applies when the greater offense was

submitted to the trier of fact at the first trial. Yet, Boggs claims the Iowa statute contains no such qualification. Thus, Boggs claims the Iowa statute provides greater protection by also prohibiting prosecution of a greater offense when the greater offense was charged, but dismissed prior to trial so that only the lesser included offense was submitted to the fact finder for adjudication. Thus, we must ultimately decide if our legislature has defined rights or protections greater than recognized under the Federal and state Due Process Clauses.

We acknowledge lesser included crimes can be identified and determined independent of any facts of a particular case. *See State v. Finnel,* 515 N.W.2d 41, 43 (Iowa 1994) (identifying a lesser included offense by "putting the offenses side by side and comparing the elements"). Thus, it would be possible for the legislature to construct a rule to bar the retrial of a greater offense of the crime of conviction, even when the greater crime was not expressly or impliedly adjudicated in the first trial. In deciding whether section 816.3 contains such a rule, we first return to the language of the statute. *See State v. Bonstetter,* 637 N.W.2d 161, 166 (Iowa 2001) (determining the intent of the legislature by considering the language of the statute).

We observe the statutory rule only applies to a "conviction of a lesser included offense." While a greater and lesser included offense can be determined in the abstract, a "*conviction* for a lesser included offense" normally signifies the fact finder was given the option to also return a conviction for the greater crime. Otherwise, it would be unnecessary to designate the conviction as "a lesser included offense." Instead, the conviction would simply be for the offense charged. Generally, we interpret statutes consistent with their normal meaning, and we refrain from an interpretation that is strained. *Gen. Elec. Co. v. Iowa State Bd. of Tax*

*Review,* 702 N.W.2d 485, 489 (Iowa 2005). Moreover, it is clear the legislature could have expressed a clear intent to bar the retrial of an unprosecuted higher offense by simply not referring to the crime of conviction as one for a lesser included offense. *See Hines v. Ill. Cent. Gulf R.R.,* 330 N.W.2d 284, 289 (Iowa 1983) (assuming "the legislature was familiar with the existing state of the law" and "if the legislature sought to remedy a specific evil it would have clearly so indicated"). In other words, the reference to a "lesser included" crime in the statute implies the higher crime excluded from reprosecution under the statute was submitted to the fact finder and included in the deliberations that led to the "conviction for a lesser included crime." An intent to exclude unprosecuted greater crimes from reprosecution would actually be expressed by excluding any reference to the crime of conviction as "a lesser included crime."

We next turn to the objectives and purpose of section 816.3(3). In interpreting statutes, we search for a reasonable interpretation that best achieves the purpose of the statute. *State v. Gonzalez,* 718 N.W.2d 304, 308 (Iowa 2006). As previously noted, the driving public policy that permits retrial after a conviction has been set aside or reversed is derived from the proper administration of justice. A retrial after a conviction has been set aside serves both the rights of a defendant and the interest of society. Furthermore, the qualification to the *Ball* exception recognized in *Green* is entirely consistent with this purpose. If a defendant is placed in jeopardy of the greater crime in the first trial, so that the fact finder implicitly acquits the defendant of the greater crime by convicting the defendant of a lesser crime, society no longer has any interest in punishing the defendant for the crime of which he or she has been acquitted. On the other hand, if the trier of fact never weighed a defendant's guilt or innocence on the greater crime at the first trial, the competing interests in the administration of justice

recognized in *Ball* as a justification for a retrial continue to exist. Yet, under the interpretation of section 816.3(3) advocated by Boggs, no retrial would be permitted. Instead, a defendant would not only be immune from a retrial, but would be permitted to rescind the guilty plea while retaining its benefits. *See Tateo,* 377 U.S. at 466, 84 S. Ct. at 1589, 12 L. Ed. 2d at 451.

These considerations have led a vast majority of the courts from other jurisdictions to conclude that a defendant who succeeds in setting aside a conviction may normally be retried on all charges in the original indictment that were not expressly or implicitly resolved by the finder of fact at the first trial. *See Sweetwine v. State,* 421 A.2d 60, 64 n.3 (Md. 1980) (citing state and federal cases). *See generally* Michael A. DiSabatino, *Retrial on Greater Offense Following Reversal of Plea-Based Conviction of Lesser Offense,* 14 A.L.R.4th 970 (1982). Only a few jurisdictions have taken the position urged by Boggs, and some of these jurisdictions later changed course and adopted the majority rule. *See Hawk v. Burkemer,* 610 F.2d 445, 446-48 (6th Cir. 1979) (overruling prior cases and adopting majority rule); *see also People v. Dugan,* 305 N.E.2d 308, 308–09 (Ill. App. Ct. 1973), *abrogated by People v. McCutcheon,* 368 N.E.2d 886, 887–89 (Ill. 1977) (plea of guilty to lesser included offense was not acquittal of greater offense). The rationale for the minority rule was largely predicated on the fear that the majority rule can unfairly discourage the exercise of the right to appeal by defendant. *See People v. Thornton,* 269 N.W.2d 192, 193 (Mich. 1978). Only one state apparently followed the minority rule at the time our legislature enacted section 816.3(3). *See Sweetwine,* 421 A.2d at 65 n.4. We consider the state of the law when a statute was enacted. *Doe v. Ray,* 251 N.W.2d 496, 501 (Iowa 1977). We also assume our legislature was familiar with the existing state of the law when it enacted section 816.3(3) in 1979. *Hines,* 330 N.W.2d at 289.

In construing statutes, it is also important to read the text of the statute in light of its overall context. *H & Z Vending v. Iowa Dep't of Inspections & Appeals,* 511 N.W.2d 397, 398 (Iowa 1994). Chapter 816 clearly governs double jeopardy. Additionally, we can derive legislative intent not only from the subject matter of statutes, but also the consequences of the competing interpretations. *State v. Dohlman,* 725 N.W.2d 428, 431 (Iowa 2006). As we have previously indicated, double jeopardy principles do not cast a protective net over retrials on a greater charge not submitted to the trier of fact in the first trial. On the other hand, situations can arise when it would be unfair to permit the prosecution of a defendant for a greater crime following reversal of a conviction for a lesser crime, even when the greater crime was not submitted for adjudication in the first prosecution. Thus, the interpretation sought by Boggs does have some appeal. However, these circumstances normally concern the situation in which the prosecutor and defendant have entered into a plea bargain (involving a reduction of the charge to a lesser included offense in exchange for an adjudication of guilt) prior to the original conviction, and the defendant then seeks to enforce the plea bargain on retrial following a reversal of the conviction on grounds other than insufficiency of evidence, while the prosecutor seeks to prosecute the defendant on the original greater offense. This situation has little to do with double jeopardy policy, but relates instead to a due process analysis that normally involves claims of prosecutorial vindictiveness. *See Blackridge v. Perry,* 417 U.S. 21, 25–29, 94 S. Ct. 2098, 2101–03, 40 L. Ed. 2d 628, 632–35 (1974); *Pearce,* 395 U.S. at 723–26, 89 S. Ct. at 2080–81, 23 L. Ed. 2d at 668–70; *United States v. Moulder,* 141 F.3d 568, 571–72 (5th Cir. 1998) (finding no double jeopardy obstacle when the state seeks to reprosecute the original charge after defendant successfully challenges a conviction based

on a plea bargain on appeal, but a due process claim of vindictiveness exists). We do not think our legislature would develop a broad rule that effectively immunizes all defendants from being retried on a crime for which jeopardy has never attached based on a due process analysis that depends upon the facts and circumstances of a particular case. *See Moulder,* 141 F.3d at 572 (considering the context of the entire proceedings in deciding a claim that reinstatement of more serious charge violated due process).

We are respectful of the power of our legislature to create rights by statute and are mindful of our limited task to discern the intent of the legislature when an enactment is disputed. *See State v. Dann,* 591 N.W.2d 635, 638 (Iowa 1999) (noting the polestar of all statutory construction is to search for the true intention of the legislature). These fundamental precepts are especially important to keep in mind in cases like this when the development of the law has been heavily influenced by judicial decision making. We emphasize that the exceptions and qualifications to the double jeopardy rule developed by our courts do not necessarily need to be shared by our legislature. *See State v. Wagner,* 596 N.W.2d 83, 87 (Iowa 1999) (recognizing the goal of statutory interpretation is not to decide what the supreme court thinks the law should be). Yet, considering our rules of statutory construction, as applied to the statute, we are convinced the legislature did not intend, by enacting the qualification to the section 816.3(3) exception, to immunize all defendants from being retried following a reversal of a conviction on the original, greater charge that was never submitted to the trier of fact at the original trial. We also observe that at least one other state court has reached the same conclusion based on statutory language similar to that in our statute. *See State v. Martinez,* 905 P.2d 715, 716 (N.M. 1995) (concluding a Code section that prohibits retrial of a defendant for a "crime or degree of the crime greater than the one of

which he was originally convicted" precludes retrial of a greater offense only after acquittal of that offense). We give weight to the judicial interpretation of similar statutory language in other jurisdictions. *Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n,* 268 N.W.2d 862, 866 (Iowa 1978), *superseded by statute on other grounds as stated in Gray v. Kinseth Corp.,* 636 N.W.2d 100, 102 (Iowa 2001).

Under our rules of statutory construction, we conclude the intent of the legislature under section 816.3(3) was only to preclude retrial on the greater crime when the greater crime was submitted for adjudication with the lesser included offense, consistent with our established double jeopardy jurisprudence. Since Boggs makes no due process claim in this case, we do not address the issue further. Section 816.3(3) did not prohibit prosecution for the original crime.

## IV. Plea Negotiations.

Boggs claims the trial court erred by admitting into evidence at trial his incriminating statements about the source and ownership of the drugs made to the officer following his arrest. He claims the statements were inadmissible plea discussions under Iowa Rule of Criminal Procedure 2.10(5). This rule, in relevant part, provides: "If a plea discussion does not result in a plea of guilty, . . . the plea discussion . . . shall not be admissible in any criminal or civil action or administrative proceeding."

Rule 2.10(5) makes certain plea discussions inadmissible at trial because they are privileged. *See State v. Taylor,* 336 N.W.2d 721, 726 (Iowa 1983). However, the privilege only extends to actual plea discussions. *Id.* It does not extend to all conversations between law enforcement and a defendant hoping to achieve some leniency by agreeing to talk to law enforcement. *See People v. Jones,* 734 N.E.2d 207, 212 (Ill. App. Ct. 2000), *rev'd on other grounds,* 757 N.E.2d 464 (Ill. 2001). Thus, a distinction exists

between "those discussions in which the accused was merely making an admission and those discussions in which the accused was seeking to negotiate a plea agreement." *United States v. Robertson,* 582 F.2d 1356, 1367 (5th Cir. 1978).

In this case, the State offered the incriminating statements into evidence at trial through the testimony of the officer who interviewed Boggs following his arrest. Boggs objected to the admission of these statements and was permitted by the district court to voir dire the witness for the purpose of supporting the objection. During the voir dire examination, Boggs established that the law enforcement officer conducted the interview in an effort to obtain an admission of guilt and to determine if a plea agreement could be reached, although there was no evidence elicited to show Boggs was aware of these purposes. Boggs also established during the voir dire examination that the interview included plea discussions and that the interviewer contacted the county attorney by telephone during the interview.[1]

Importantly, Boggs failed to produce any evidence to reveal that point during the interview when plea discussions first occurred and that point when the incriminating statements were made by Boggs to the officer. Plea discussions that take place during the course of a general police interview of a suspect do not transform the entire interview into a plea discussion so

---

[1]Various rules of evidence also address the relevancy of plea negotiations and other such postoffense activity. *See* B. John Burns, *Iowa Practice, Criminal Procedure* § 25:2(e) (2007) [hereinafter Burns]. In particular, rule of evidence 5.410 makes certain pleas, plea discussions, and related statements inadmissible, including "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." Iowa R. Evid. 5.410(4). This rule correlates with Iowa Rule of Criminal Procedure 2.10(5), but rule of evidence 5.410 is specifically limited to plea negotiations with a prosecuting attorney. Rule 2.10(5) applies to "all discussions relating to resolution of the case including those between the defense and law enforcement officers." Burns, at § 25:2(e). Boggs makes no claim that rule 5.410(4) applies to this case.

that all statements made during the interview become privileged under rule 2.10(5). Instead, the "totality of the circumstances" must be examined to determine "whether a discussion can properly be characterized as a privileged plea negotiation." *State v. Hovind*, 431 N.W.2d 366, 370 (Iowa 1988). A defendant must exhibit an "actual subjective expectation to negotiate a plea at the time of the discussion," and the defendant's expectation must be " 'reasonable given the totality of the objective circumstances.' " *Taylor*, 336 N.W.2d at 726 (quoting *Robertson*, 582 F.2d at 1366).

While plea discussions took place in this case, there was no evidence elicited that Boggs had a reasonable expectation to negotiate a plea at the time he made the incriminating statements pertaining to the source and ownership of the drugs found in his residence. Boggs' counsel was given an opportunity to elicit this evidence and failed to do so. Accordingly, we conclude the district court did not err in admitting the incriminating statements. [2]

## V. Substitute Counsel at Sentencing.

Boggs claims the district court erred by failing to grant the motion to withdraw filed by his counsel prior to the sentencing. He claims a complete breakdown of the attorney-client relationship took place that justified

---

[2]On appeal, we denied a request by Boggs to supplement the record with a videotape of the interview between Boggs and the law enforcement officer. A videotape of the interview would be very helpful in determining whether the incriminating statements by Boggs were privileged, but the videotape in this case was never introduced into evidence or otherwise made a part of the trial court record. It is a fundamental principle that our review of district court rulings is limited to the record made before the district court. Additionally, Boggs did not raise any claim of ineffective assistance of trial counsel based on the failure of his trial counsel to make an adequate record of the interview at trial. Boggs did claim on appeal that his trial counsel was ineffective for failing to file a motion to suppress the incriminating statements. However, Boggs raised this claim only if we found he failed to preserve error on his claim by objecting at trial that the incriminating statements were improperly admitted. Boggs preserved error by making his trial objection, but failed to establish grounds to support his claim of error.

substitution of counsel prior to the sentencing hearing after his attorney informed the trial court that he was unable to zealously represent him and speak on his behalf at the time of sentencing. Boggs further claims he was denied effective assistance of counsel at sentencing when his attorney actually declined to speak on his behalf after the court denied the motion to withdraw. Thus, Boggs not only claims the district court erred by denying the motion to withdraw and failing to appoint substitute counsel, but that his rights to effective counsel guaranteed under the Sixth Amendment to the Federal Constitution and article I, section 10 of the Iowa Constitution were denied when his attorney failed to speak on his behalf at sentencing. Boggs does not claim the denial of the motion to withdraw and the failure to appoint substitute counsel implicated any form of waiver of his right of self-representation or that the court failed to adequately inquire into the need for substitute counsel. *See State v. Martin*, 608 N.W.2d 445, 449–50 (Iowa 2000); *Tejeda*, 677 N.W.2d at 794. Instead, Boggs asserts the record justified the appointment of substitute counsel.

A defendant has a right to counsel "[a]t all critical stages of the criminal process." *State v. Majeres*, 722 N.W.2d 179, 182 (Iowa 2006). This right extends to sentencing. The grounds to justify the appointment of substitute counsel include a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the defendant and counsel. *Martin*, 608 N.W.2d at 449. The defendant must show the grounds to justify substitute counsel. *Id.* The court has considerable discretion whether to grant substitute counsel, and eleventh-hour requests for substitute counsel are generally disfavored. *Tejeda*, 677 N.W.2d at 749.

A complete breakdown in communication supports the appointment of substitute counsel because it deprives counsel of a critical component to an adequate defense—attorney-client communication. *See State v. Barrow*,

287 F.3d 733, 738 (8th Cir. 2002) (focusing inquiry on the adequacy of counsel in the adversarial process). Yet, general frustration and dissatisfaction with defense counsel expressed by a defendant does not alone render counsel unable to perform as a zealous and effective advocate. The focus of the inquiry is not on the defendant's relationship with his or her attorney, but "the adequacy of counsel in the adversarial process." *Id.* In reality, "a person accused of a crime is often genuinely unhappy with an appointed counsel who is nevertheless doing a good job." *Id.* Thus, not all criticism lodged by a defendant against defense counsel requires new counsel. Nevertheless, counsel for Boggs took the position in this case that the criticism leveled by Boggs rendered him unable to be a zealous advocate and prevented him from speaking on his behalf at sentencing. Thus, two questions are presented. The first question is whether counsel's declaration of intent to remain silent at sentencing justified the appointment of substitute counsel. The second question is whether Boggs was denied effective assistance of counsel when his attorney failed to speak on his behalf in mitigation of the sentence.

Before considering these questions, we turn to the element of prejudice. In the context of a claim for ineffective assistance of counsel, defendant must establish that prejudice resulted from the ineffective assistance. *See State v. Simmons*, 714 N.W.2d 264, 276 (Iowa 2006) (stating prejudice exists when it is reasonably probable the result would have been different without counsel's unprofessional error). Similarly, a defendant must generally establish prejudice when denied substitute counsel unless the defendant was completely denied counsel or counsel had a conflict of interest. *State v. Lopez*, 633 N.W.2d 774, 779 (Iowa 2001). Similar to a complete denial of counsel, a third exception to the rule of prejudice governing the denial of substitute counsel is recognized when " 'counsel

entirely fails to subject the prosecution's case to meaningful adversarial testing.' "[3] *Bell v. Cone*, 535 U.S. 685, 696, 122 S. Ct. 1843, 1851, 152 L. Ed. 2d 914, 928 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047, 80 L. Ed. 2d 657, 668 (1984)). Importantly, this exception recognized in *Cronic* requires a complete failure by counsel. *Bell*, 535 U.S. at 697, 122 S. Ct. at 1851, 152 L. Ed. 2d at 928.

If none of the three exceptions apply in this case, prejudice is required to be established. Thus, we must decide if Boggs' claim falls within one of the three exceptions. Boggs does not claim he was denied counsel or his counsel had an irreconcilable conflict. Moreover, he does not claim his counsel failed to represent him at the sentencing hearing as a whole, but only in failing to address the court on his behalf in mitigation of punishment. *See id.* Consequently, the specific failure of counsel to speak on behalf of Boggs in mitigation of punishment at the sentencing does not fall within the third exception. *See Darden v. Wainwright*, 477 U.S. 168, 185–86, 106 S. Ct. 2464, 2473–74, 91 L. Ed. 2d 144, 160–61 (1986) (holding failure of counsel to offer any mitigation evidence at sentencing did not constitute ineffective assistance of counsel); *Burger v. Kemp*, 483 U.S. 776, 788, 107 S. Ct. 3114, 3122, 97 L. Ed. 2d 638, 653 (1987) (same). Accordingly, Boggs must show he suffered prejudice in his claim that the trial court erred in failing to appoint substitute counsel at sentencing, as well as with his claim that he was denied effective assistance of counsel at sentencing.

The existence of prejudice is evaluated under the same standard as a claim for ineffective assistance of counsel. *See Bell*, 535 U.S. at 697–98,

---

[3]We have adopted the two exceptions to the prejudice requirement from *Williams v. Nix*, 751 F.2d 956, 966 (8th Cir. 1985). *See State v. Brooks*, 540 N.W.2d 270, 272 (Iowa 1995).

104 S. Ct. at 1851–52, 80 L. Ed. 2d at 929. Boggs has failed to explain how he was prejudiced, and our review of the record fails to support prejudice. After the district court denied the motion to withdraw, Boggs' counsel acknowledged he had reviewed the presentence investigation report and found no errors. He also informed the district court that he gave Boggs a copy of the presentence investigation report prior to the sentencing. Additionally, he told the district court he knew of no reason why the court could not pronounce the sentence.

Counsel for Boggs did fail to speak on behalf of Boggs in mitigation of punishment at the sentencing hearing. However, Boggs submitted a written statement of mitigation together with other documents in mitigation of punishment. He was also given his right of allocution. Boggs makes no claim that the sentence imposed by the district court was illegal or that any evidence in mitigation existed that was not presented to the court. The court was fully apprised of Boggs' background and other matters pertinent to the imposition of sentence by the presentence investigation report. Under all the circumstances, Boggs has failed to establish prejudice.

## VI. Ineffective Assistance of Trial Counsel.

Boggs claims his trial counsel was ineffective for two main reasons. First, he claims trial counsel was ineffective for failing to object to an instruction given to the jury by the district court concerning Boggs' character and reputation for drug use. Boggs points out that no evidence was presented at trial concerning his good character or reputation, and the only evidence of his drug use was introduced by the officer who executed the search warrant when he mentioned that the occupants of the house had a history of drug activity. Boggs believes the instruction and this evidence permitted the jury to consider the evidence of his drug use in deciding whether he was guilty of the crimes charged.

Boggs also claims his trial counsel failed to object to multiple incidents of prosecutorial misconduct during closing arguments. Boggs claims the prosecutor repeatedly made improper references about removing drugs from the streets of the community. He also claims the prosecutor made improper comment on the credibility of witnesses when he stated that Boggs' defense in the case was to show the State's witnesses were "lying" and when he argued that police who testified did not lie.

To establish a claim of ineffective assistance of counsel, a defendant must show trial counsel failed to perform an essential duty and prejudice resulted. *State v. McPhillips*, 580 N.W.2d 748, 754 (Iowa 1998). Generally, claims of ineffective assistance of counsel are preserved for postconviction relief. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). However, if the record shows the defendant cannot prevail under either element as a matter of law, we will affirm the conviction without preserving the claim. *Id.* In this case, we turn to the second prong of the test without considering the first.

The defendant establishes prejudice by showing " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Graves*, 668 N.W.2d at 882 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 697 (1984)). This standard is met when the probability of a different result is " 'sufficient to undermine confidence in the outcome.' " *Id.* We consider the totality of the circumstances, the factual findings that would have been affected by counsel's conduct and whether the effect of the conduct was pervasive or isolated and trivial. *See Graves*, 668 N.W.2d at 882-83. To the extent Boggs makes a due process claim based on prosecutorial misconduct, we consider whether Boggs was denied a fair trial in light of the following factors:

(1) the severity and pervasiveness of misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; (5) the extent to which the defense invited the misconduct.

*Id.* at 869 (citations omitted). The most important factor is the strength of the State's case against the defendant. *State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006).

The submission of the character instruction to the jury was perplexing, at best. The instruction permitted the jury to consider evidence of Boggs' good character or reputation regarding drug use in deciding if he committed the crimes charged, but no such evidence of good character was introduced. Generally, the submission of an instruction unsubstantiated by the evidence is prejudicial. *Tejeda*, 677 N.W.2d at 753. Yet, the error in the submission of the instruction under the circumstances of this case does not undermine our confidence in the verdict. *See id.* The officers' testimony that the occupants of the house had a history of drug use could be considered as evidence of a bad reputation regarding drug use, but the instruction did not specifically tell the jury it could consider Boggs' bad history or reputation for drug use in considering its verdict. The instruction largely informed the jury how to consider evidence of good character. Thus, we do not share Boggs' concern that the instruction impacted the verdict. Additionally, the prosecutor did not make any argument to suggest the instruction could be used in such a manner. Moreover, the State's case against Boggs was overwhelming. He was caught "red-handed"[4] by law enforcement officers dividing a large quantity of methamphetamine into

---

[4]The phrase "red-handed" is derived from the anonymous Latin phrase "*flagrante delicto.*" *Bartels Familiar Quotations* 123:128 (17th ed. 2002). "To be caught 'red-handed' is to be caught in the act, in *flagrante delicto*, as if with blood on the hands." *Brewer's Dictionary of Phrase and Fable* 920 (14th ed. 1989). *Black's Law Dictionary* 782 (7th ed. 1999) translates "*flagrante delicto*" as "while the crime is ablaze."

small quantities in a room filled with numerous drug paraphernalia and other evidence of drug dealing. *See id.* at 755 (holding no prejudice resulted for the purposes of an ineffective-assistance-of-counsel claim when the prosecution presented overwhelming evidence of the defendant's guilt and the effect of a superfluous jury instruction was speculative).

We also conclude the conduct of the prosecutor during closing argument did not result in prejudice to Boggs. At the outset, comments about the "community" are improper when used to improperly inflame the jury. *See State v. Johnson*, 534 N.W.2d 118, 128 (Iowa Ct. App. 1995) (prosecutor urged jury to convict to "protect community values"). Similarly, a prosecutor who calls a witness a "liar" improperly inflames the jury. *See Carey*, 709 N.W.2d at 558. While we do not decide if the comments in this case constituted misconduct, they were not egregious. The references to the community were not pervasive and largely related to the intent-to-distribute element of the crime, not the need for the jury to convict to protect the community. *See State v. Monroe*, 236 N.W.2d 24, 30–31 (Iowa 1975) (condemning prosecutor's references regarding the need to protect the community from drug dealing because their purpose was to inflame the jury). Similarly, the statements by the prosecutor about "lying" were isolated and generalized with no specific reference to Boggs. *See Carey*, 709 N.W.2d at 558 (suggesting that, while referring to the defendant as a liar is misconduct, asking the jury to make reasonable inferences as to the believability of certain testimony, based on the evidence, is permissible).

Under all the circumstances, no prejudice can be observed. The alleged improper comments were not inflammatory and were isolated. Moreover, as previously indicated, the case against Boggs was strong.

**VII.  Conclusion.**

For the reasons set forth in this opinion, we reject all claims raised by Boggs in support of his appeal.  We affirm the judgment and sentence of the district court.

**AFFIRMED.**