# IN THE COURT OF APPEALS OF IOWA

No. 15-0494
Filed October 28, 2015

IN THE MATTER OF S.S.,
Alleged to be Seriously Mentally Impaired,
        Appellant.
_____

Appeal from the Iowa District Court for Buchanan County, David P. Odekirk, Judge.

S.S. appeals from a district court order finding her seriously mentally impaired and requiring continuation of her inpatient treatment. **REVERSED AND REMANDED.**

Nina Forcier of Forcier Law Office, P.L.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, Gretchen Witte Kraemer, Assistant Attorney General, Shawn M. Harden, County Attorney, and Mike Hudson, Assistant County Attorney, for appellee State.

Heard by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

S.S. appeals the district court's order finding her to be seriously mentally impaired and requiring continuation of her inpatient treatment. Because we conclude the evidence is insufficient to establish S.S. is a danger to herself or others, we reverse the district court's order and remand for dismissal of the application.

### I. *Background Facts and Proceedings*.

On August 27, 2014, an application alleging serious mental impairment was filed, alleging S.S. was homicidal, suicidal, delusional, and paranoid, with anger outbursts and threats to kill herself and family members. *See* Iowa Code § 229.6 (2013) (setting forth procedure for commencement of involuntary commitment proceeding). It also alleged S.S. had a history of methamphetamine abuse. An order for immediate custody was entered. S.S. was taken into custody and detained at St. Luke's Hospital in Cedar Rapids for inpatient evaluation.

A September 1, 2014 physician's evaluation indicated S.S. was seriously mentally impaired, with a diagnosis of major depressive disorder. The doctor found S.S. was not able to make responsible decisions regarding her treatment, she was treatable, and she was likely to benefit from treatment. The doctor also stated S.S. was a danger to herself or others. Outpatient treatment was recommended. After a September 2 hearing, S.S. was found to be seriously mentally impaired. She was committed to outpatient treatment at Black Hawk-Grundy Mental Health Center in Waterloo.

On September 9, S.S. was arrested and taken into custody for violations of a no-contact order and pre-trial release. On October 2, the jail administrator filed an application alleging S.S. was seriously mentally impaired. S.S. was ordered to be detained at Covenant Hospital ER in Waterloo until the hearing date. The next day, the jail administrator filed an application to rescind his application due to S.S.'s incarceration in the jail. The application was ordered rescinded, and S.S. remained in the custody of the jail.

On October 17, the jail administrator filed another application alleging S.S. was seriously mentally impaired. The allegations were identical to those made in the previous application. S.S. was again ordered to be detained at Covenant ER until the hearing date.

A physician's report of examination was filed with the court. The physician found S.S. was afflicted with a mental illness—major depression, was not capable of making responsible decisions with respect to her treatment, and would be expected to injure herself or others if allowed to remain at liberty without treatment. The doctor also concluded that if S.S. was allowed to remain at liberty without treatment, she would likely inflict serious emotional injury on family members or others unable to avoid contact with her. The doctor recommended S.S. be evaluated on an outpatient basis. After an October 22 hearing, S.S. was ordered to be committed on an outpatient basis to Black Hawk-Grundy Mental Health for a complete psychiatric evaluation and treatment. The sheriff's records indicate S.S. was taken back to the substance-abuse-rehabilitation center at Covenant Medical Center after the hearing.

On November 19, Black Hawk-Grundy Mental Health filed with the court a periodic report indicating S.S. had not made any contact with the facility. On February 5, 2015, the court entered an order setting a hearing to determine whether S.S.'s failure or refusal to submit to treatment was with good cause and whether she required full-time custody, care, and treatment in a facility. On February 12, S.S. was transported to Covenant Medical Center for examination and care. Another physician's report, substantially similar to the previous report, was provided to the court.

Hearing was held on February 17. In his order, the magistrate acknowledged receiving the doctor's report finding S.S. was "not capable of making responsible decisions with respect to her hospitalization . . . [and] would physically injure herself or others if allowed to remain at liberty without treatment." The report indicated it was the recommendation of Covenant that S.S. "be treated on an out-patient basis." The magistrate found:

> [S.S.'s] past history has shown she is unwilling to comply with out-patient treatment. Her testimony highlighted her belief that in her opinion treatment is unnecessary and a waste of her time. This court has no confidence in [S.S.'s] willingness to comply with court-ordered treatment, and [S.S.] has shown herself to be a danger to herself and others if allowed to remain at liberty without treatment. The [doctor's] report also indicated that she could be a danger to herself or others if she were allowed to remain at liberty without treatment.

The court ordered that S.S. "be committed to inpatient treatment at Covenant [Medical Center] until such time that a proper in-patient facility is available" and

that she "comply with any in-patient treatment recommendations."[1] S.S. was "not to be transferred to out-patient treatment without prior order from [the] court." S.S. then appealed from the magistrate's order to the district court pursuant to Iowa Code section 229.21(3)(a).

On February 18, the magistrate received a telephone call from the attending physician at Covenant inquiring as to S.S.'s status and her inpatient treatment. In a February 18 order, the magistrate stated:

> This court advised the physician that [S.S.] was ordered inpatient treatment based upon the court record and previous testimony of witnesses indicating [S.S.] has threatened to kill others as well as herself, in addition to [S.S.'s] own attempts to kill herself while in custody and [her] own testimony at time of [February 17] revocation hearing . . . that she did not need treatment and was refusing the medication previously recommended by Black Hawk-Grundy Health.
> This court also advised the physician that [S.S.] was ordered inpatient treatment because the medical report . . . indicated [S.S.] would be a danger to herself and others if allowed to remain at liberty without treatment. Given [S.S.'s] refusal to comply with court-ordered treatment for both her substance-abuse matter ([S.S.] has absconded twice from Horizons) and her failure to comply with recommendations of the previously ordered treatment provider Black Hawk-Grundy, this court advised the physician that [S.S.] is to remain in court-ordered inpatient treatment.

S.S. was examined again on February 24, 2015, and a physician's report was provided to the district court. Like the previous two reports, the doctor found S.S. was afflicted with a mental illness and not capable of making responsible decisions with respect to her hospitalization or treatment. In the doctor's

---

[1] Iowa Code section 229.14(2)(d) provides

> that, should the respondent fail or refuse to submit to treatment in accordance with the court's order, the court may order . . . the respondent treated on an inpatient basis requiring full-time custody, care, and treatment in a hospital until such time as the chief medical officer reports that the respondent does not require further treatment for serious mental impairment or has indicated the respondent is willing to submit to treatment on another basis as ordered by the court.

judgment, if S.S. was allowed to remain at liberty without treatment, she would be expected to injure herself or others physically and was likely to inflict serious emotional injury on family members or others unable to avoid contact with her. The doctor recommended evaluation on an outpatient basis and concluded full time hospitalization was not necessary for evaluation, noting S.S. seemed "to be having significant difficulties with family members" and needed "counselling (as an outpatient) to deal with her family issues."

Hearing before the district court was held on February 24, and S.S. testified. In a de novo trial, *see* Iowa Code section 229.21(3)(c), the court took judicial notice of the entire court file as well as the audio recording of the hearing before the magistrate. The next day, the district court entered its order concluding:

> 1. [The] State has shown by clear and convincing evidence:
>     A. That [S.S.] has a mental illness; and
>     B. Because of that mental illness, [S.S.] lacks sufficient judgment to make responsible decisions with respect to her own hospitalization and treatment, if she is not treated; and
>     C. Because of that mental illness, [S.S.] is likely to injure herself or others if allowed to remain at liberty without treatment. Further, [S.S.] is likely to cause serious emotional injury on someone that cannot avoid contact with her if allowed to remain at liberty without treatment and is unable to satisfy her own basic needs so that it is likely that she will suffer serious physical injury or death.
> 2. That the "dangerousness" element has been demonstrated by numerous recent overt acts and failure to follow through with previously ordered outpatient treatment.
> 3. [S.S.] is unable to make a rational decision about treatment, whether the decision be to seek treatment or not to seek treatment.
> 4. That the court has considered whether there are less restrictive environments medically possible to treat [S.S.] and finds that there is no less restrictive environment available to [S.S.] at this time.

The court ordered S.S.'s inpatient commitment be continued at Covenant Medical Center until a more appropriate inpatient facility became available.

On March 24, S.S. filed her notice of appeal from the district court's February 25, 2015 order. She argues, among other things, the district court erred in finding her seriously mentally ill because "all express elements of the statute were not supported by substantial evidence."

## II. Standard of Review.

We review sufficiency-of-the-evidence challenges in involuntary-commitment appeals for errors at law. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). "[T]he district court's findings of fact are binding on us if supported by substantial evidence. Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998) (internal citations omitted). "Clear and convincing evidence . . . means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *B.B.*, 826 N.W.2d at 428.

We confine our review to the record made before the district court at the February 24, 2015 hearing. *See State v. Boggs*, 741 N.W.2d 492, 505 n.2 (Iowa 2007) ("It is a fundamental principle that our review of district court rulings is limited to the record before the district court."); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded."). Thus, events occurring after the hearing are beyond the scope of the proper record on appeal, and we do not consider them. *See id.*

### III. Discussion.

S.S. contends the State failed to prove by clear and convincing evidence that she is seriously mentally impaired. Iowa Code section 229.1(17) provides that a person is "seriously mentally impaired" where the person is mentally ill and "because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment," and is likely, if allowed to remain at liberty, to inflict physical injury on himself or others or to inflict emotional injury on the designated class of persons. *See also B.B.*, 826 N.W.2d at 432 (discussing section 229.1(17)). "Likely" is construed to mean "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980). "[T]he endangerment element requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (citation and internal quotation marks omitted). The danger the person poses to himself or others must be evidenced by a "recent overt act, attempt or threat." *Id.* "In the context of civil commitment, . . . an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). Overt acts include behavior such as threats to kill. *See id.* at 379. "[B]ecause predicting dangerousness is difficult and, at best, speculative," stringent proof is required. *Foster*, 426 N.W.2d at 377-78.

S.S. contends substantial evidence does not support a finding she has a mental illness. In a September 1, 2014 report to the court, Dr. James diagnosed S.S. with major depressive disorder. In an October 21, 2014 report to the court,

Dr. Doumanian diagnosed S.S. with "[m]ajor [d]epression, recurrent, without psychotic symptoms." In February 14 and 24, 2015 reports to the court, Dr. Kantamneni diagnosed S.S. with "[m]ajor [d]epression, recurrent, without psychotic symptoms." All of the doctors that evaluated S.S. consistently opined to the court that S.S. was afflicted with a mental illness—major depression. We find this evidence sufficient to establish S.S. is mentally ill under section 229.1(17).

S.S. also contends substantial evidence does not support a finding that she lacks sufficient judgment to make decisions about her treatment. S.S. testified at the hearing that she did not feel the need for any mental-illness treatment, but if the court ordered her to treatment on an outpatient basis, she would comply. It was the judgment of each examining doctor that S.S. was not capable of making responsible decisions with respect to her hospitalization or treatment. Dr. Kantamneni's February 24, 2015 report, the most recent report before the court, found S.S. was not capable of making responsible decisions with respect to her hospitalization or treatment. S.S. was "supposed to follow up with outpatient treatment" but "did not keep her appointments," stating she did "not think that she needs any help" and did not have a car for getting to appointments. We find this evidence sufficient to establish S.S. lacked sufficient judgment to make responsible decisions with respect to her treatment under section 229.1(17).

S.S. also contends substantial evidence does not support a finding that, if allowed to remain at liberty without treatment, she is likely to injure herself or others, or is likely to cause serious emotional injury to family members.

Specifically, S.S. argues the "endangerment element" was not proved by clear and convincing evidence because there was no proof of recent overt acts, attempts, or threats. To support this contention, S.S. claims there were no incidents more recent than the behaviors she displayed while jailed in September 2014—incidents that occurred approximately six months prior to the district court hearing. The only reference in Dr. Kantamneni's February 24, 2015 report to "recent overt acts, attempts or threats" was the doctor's statement that S.S. was admitted to the hospital in October 2014 by a court's order after "making suicidal statements and [trying] to hurt herself by drinking a non-poisonous cleaning solution." We believe these acts are too remote in time to meet the temporal "recent overt acts, attempts or threats" requirement of the endangerment element.

Although the doctor noted S.S. got "into arguments with family members" and "seem[ed] to be having significant difficulties with family members," there is nothing to connote the arguments to be evidence of aggressive behavior or threats manifesting the probable commission of a dangerous act upon others that is likely to result in physical injury. Furthermore, the doctor did not indicate when the arguments took place. This evidence does not establish recent overt acts and is simply too vague to provide clear and convincing evidence of dangerousness.

Taking all of the above into consideration, we find the endangerment element has not been met. No substantial evidence supports the district court's finding that S.S. is likely to injure herself or others under section 229.1(17)(a) and

is likely to cause serious emotional injury to family members under section 229.1(17)(b) if allowed to remain at liberty without treatment.

### IV. Conclusion.

Because the evidence is insufficient to establish S.S. is a danger to herself or others, we reverse the district court's order and remand for dismissal of the application. In view of our disposition, we need not address S.S.'s other claims on appeal.

**REVERSED AND REMANDED.**