**STATE of Iowa, Plaintiff–Appellee,**

v.

**Harlan MOTT Jr., Defendant–Appellant.**

No. 07–1180.

Court of Appeals of Iowa.

Oct. 29, 2008.

Susan Stockdale, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, John P. Sarcone, County Attorney, and Jeffrey Noble and George Karnas, Assistant County Attorneys, for appellee.

Heard by VOGEL, P.J., and MAHAN and MILLER, JJ.

MAHAN, J.

Harlan Mott Jr. appeals following conviction and sentence for kidnapping in the first degree and assault causing bodily injury. He asserts the following on appeal: (1) there was insufficient evidence to support his conviction for kidnapping in the first degree; (2) his trial counsel was ineffective in failing to challenge the weight of the evidence in a motion for new trial and in failing to move for a judgment of acquittal; (3) the district court abused its discretion in permitting "hybrid" representation; and (4) the court abused its discretion in denying his motions for substitute counsel. Through a pro se brief, Mott also raises a jury instruction challenge and several evidentiary and ineffective assistance of counsel claims. We affirm.

## I. Background Facts and Proceedings.

Lisa Floyd met Mott through friends in late October 2006. Floyd saw Mott almost daily after they met and spent at least two nights at his home.[1] On November 4, 2006, Floyd had the night off work and made plans to go out with Mott, Timothy and Martha Miller (Mott's nephew and his wife), and two other friends. The group met at Mott's and then rode in two cars to Prairie Meadows Casino. Floyd and Mott gambled and each drank about four drinks. From Prairie Meadows, the group went to a nearby truck stop for breakfast. After breakfast, Floyd and Mott rode with the Millers to the Brew Haus, a bar owned by Floyd's relatives, to continue drinking. The two other friends went home. The group left the Brew Haus when Mott punched a man in the face and knocked

---

1. Floyd denied she and Mott had sex or that she planned to move in with him.

him to the ground for making a derogatory comment about the Millers' dancing ability. Mott was mad and blamed Floyd for the incident because her family owned the bar. Mott swore at Floyd and hit her in the ribs and the face as Floyd and Mott rode in the backseat of the Millers' car to Mott's house.

The Millers dropped Floyd and Mott off at Mott's house, and Floyd got into her car to leave. As she backed out of the driveway, her car window exploded in her face and showered her with glass.[2] Floyd quickly drove away, but stopped at a nearby QuikTrip to tend to her injuries. The Millers had also stopped at the QuikTrip, and Martha Miller went with Floyd into the QuikTrip bathroom. Soon Mott arrived at the QuikTrip and kicked the bathroom door open. He grabbed Floyd by her hair and said, "Let's go, bitch, now." Floyd went with Mott because she did not know what else to do. She did not think there was anyone that could help her and did not want to be hurt anymore.[3]

She drove her car to Mott's house, with Mott following closely behind her in his car.[4] Once they were inside Mott's house, Mott continued to beat Floyd, and she lost consciousness a couple times. Mott got on top of her, choked her, and told her he was going to kill her. Later, under Mott's orders, Floyd went to Mott's bedroom and undressed because Mott said he was going to rape her and threatened to make her "suck his dick." Instead of doing that, however, Mott unfolded a knife and threw it at Floyd twice. The first time the knife missed, but the second time the knife hit Floyd in her arm. Mott told her he was going to kill her and her children. Eventually Floyd lay down in bed, but she did not sleep. Mott got in bed next to her, but Floyd did not think he was sleeping.

The next morning Floyd heard people knock on the door four times, but Mott did not respond and ordered Floyd to lie still. Eventually Floyd persuaded Mott to let her leave to go to the hospital to get medical attention for her eye. She promised she would tell the hospital that she had been beaten up at QuikTrip and that she would not call the police. Floyd also promised she would return to Mott's house, and she left her bag of clothes there. Floyd received treatment at the hospital for her scratched cornea, broken ribs, cuts, and other wounds. She did not tell the truth about what happened because she was scared of what Mott would do if she turned him in. Floyd's family was eventually able to persuade her to call the police later in the evening of November 5, 2006.

On November 15, 2006, the State charged Mott with kidnapping in the first degree, attempted murder, and willful injury.[5] Mott insisted that he wanted to proceed pro se but would take an assistant as long as it was not someone from the public defender's office.[6] The court, how-

---

2. Police later discovered a large metal padlock in Floyd's car that had caused the broken window.

3. Timothy Miller initially called 911 from QuikTrip after observing Mott's violent behavior. He subsequently called back in a frantic voice expressing concern that Floyd might be killed.

4. According to Floyd, Mott followed so closely behind her it seemed like he was "corralling"

her car. The record is unclear whether Floyd's car was parked in front of or behind Mott's car in Mott's driveway.

5. The State later moved to amend the count of attempted murder to burglary in the first degree. The court granted the State's motion on May 2, 2007.

6. Mott alleged he had experienced problems with public defenders in the past.

ever, appointed the public defender's office to act as Mott's standby counsel. On December 18, 2006, a hearing was held on the State's request for a formal inquiry into Mott's request to represent himself. After a lengthy colloquy, the court found Mott was aware of his right to be represented by an attorney and had made a knowing, intelligent, and voluntary waiver of that right. The public defender's office was ordered to continue acting as standby counsel.

From January through May 2007, a number of problems arose during discovery and pretrial hearings. Mott uttered profanities and walked out of most hearings prematurely. Other times Mott was removed from the hearings. Mott was required to wear restraints while meeting with his counsel and during trial. During depositions, Mott used profanity, threatened the parties, and called the parties names. On several occasions Mott swore at the judge and called the judge names. The court eventually found Mott in contempt for his misconduct and ordered him to serve ninety days in jail. Throughout these months, Mott continued to complain about having to wear restraints and maintained that he wanted control over his defense. On May 2, 2007, at a hearing on pending motions and Mott's pro se status, the court revoked Mott's pro se status, appointed his standby counsel as counsel, and removed Mott from the hearing. The court found Mott in contempt for his con-

duct at the hearing and ordered him to serve 100 days in jail consecutive to the prior contempt sentence.

Trial began on May 21, 2006, and lasted several days. The court permitted Mott to write down questions he wanted his counsel to ask each witness. Mott's testimony ended early when he made inappropriate comments. The court ordered Mott to be removed from the courtroom when he made comments during the State's closing argument. On June 1, 2006, the jury returned verdicts finding Mott guilty of kidnapping in the first degree and assault causing bodily injury.[7] Mott again made inappropriate comments during the reading of the verdict and assaulted a detective as he was removed from the courtroom.[8] Mott was sentenced to serve the rest of his life in prison.[9] Mott now appeals.

## II.  Merits.

### A.  Sufficiency of the Evidence.

■ Mott argues there was insufficient evidence to support his conviction for kidnapping in the first degree. Specifically, Mott contends there was insufficient evidence that he removed Floyd from Quik-Trip and forced her to drive her own car back to his house against her will.[10]

■ We review challenges to the sufficiency of the evidence for the correction of errors of law. Iowa R.App. P. 6.4; *State v. Keeton,* 710 N.W.2d 531, 532 (Iowa 2006). In reviewing challenges to the suf-

---

7.  The charge for assault causing bodily injury was a lesser-included offense of burglary in the first degree.

8.  Mott's behavior during his testimony and during the reading of the verdict prompted the court to impose two additional contempt sentences—120 days consecutive and 180 days consecutive to the prior contempt sentences.

9.  The court ordered Mott to be removed from the courtroom during the sentencing hearing

before Floyd finished speaking and the court imposed his sentence.

10.  Mott further contends there was insufficient evidence that he confined or removed Floyd with the specific intent to inflict serious injury, commit sexual abuse, or secretly confine her. This argument, however, has been raised as a claim for ineffective assistance of counsel and will be addressed below.

ficiency of the evidence supporting a guilty verdict, we consider all of the evidence in the record in the light most favorable to the State and make all reasonable inferences that may fairly be drawn from the evidence. *Keeton,* 710 N.W.2d at 532.

Mott challenges the sufficiency of the evidence to support his conviction for kidnapping in the first degree. Kidnapping is defined as follows:

> A person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:
>
> . . . .
>
> 3. The intent to inflict serious injury upon such person, or to subject the person to a sexual abuse.
>
> 4. The intent to secretly confine such person.
>
> . . . .

Iowa Code § 710.1 (2005).

Mott argues Floyd consented to go to Mott's house and that she voluntarily left the QuikTrip and went to Mott's house on her own free will. By the time Floyd reached the QuikTrip on the night of the attack, she was injured and frightened. Mott had punched a man earlier in the evening at the Brew Haus and had sworn at Floyd and blamed her for the incident. He then assaulted Floyd in the car on the way home from the Brew Haus. As Floyd attempted to leave Mott's house, her car window was shattered, and she was showered with glass. She felt as if she had a piece of glass in her eye and could barely see to drive because her eyes were swollen shut.

Floyd stopped at QuikTrip to tend to her injuries with the help of Martha Miller. Floyd was frightened when Mott barged into the bathroom. He grabbed her hair and said, "Let's go, bitch, now." Mott also threatened the Millers. Floyd went with Mott because she did not know what else to do. She was injured, scared, and did not want him to hurt her again. As Floyd drove to Mott's house, Mott followed closely behind her in his car, "corralling" her car.

Considering the evidence in the record in the light most favorable to the State and making all reasonable inferences that may fairly be drawn, we find the evidence substantially supports the jury's finding that Floyd did not voluntarily go back to Mott's house, but rather, Mott removed her through threats of continued violence. We affirm on this issue.

## B. Ineffective Assistance of Counsel.

Mott claims there was insufficient evidence that he confined or removed Floyd with the specific intent to inflict serious injury, commit sexual abuse, or secretly confine her, and that his counsel was ineffective in failing to challenge the sufficiency of such evidence. Mott further contends his counsel was ineffective in failing to move for a judgment of acquittal or new trial when the verdict was contrary to the weight of the evidence.

To establish a claim of ineffective assistance of counsel, a defendant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *State v. Maxwell,* 743 N.W.2d 185, 195 (Iowa 2008). A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *State v. Polly,* 657 N.W.2d 462, 465 (Iowa 2003).

■■■ We conduct a de novo review of alleged constitutional violations. *State v. Decker,* 744 N.W.2d 346 (Iowa 2008). We therefore conduct a de novo review of ineffective assistance of counsel claims. *State v. Maxwell,* 743 N.W.2d 185, 195 (Iowa 2008). Unless the record on direct appeal is adequate to address these issues, a claim of ineffective assistance of counsel is generally preserved for postconviction proceedings. *State v. Bearse,* 748 N.W.2d 211, 214 (Iowa 2008). We conclude the record is adequate to address these claims of ineffectiveness. Upon our review, we find these claims to be without merit.

### C. Abuse of Discretion.

Mott argues the district court abused its discretion in permitting "hybrid" representation. Mott further contends the court abused its discretion in denying his motions for substitute counsel.

■■■ In reviewing challenges to a defendant's hybrid representation, we review the court's determinations for abuse of discretion. *State v. Cooley,* 468 N.W.2d 833, 837 (Iowa Ct.App.1991). An abuse of discretion occurs when the trial court exercises its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Parker,* 747 N.W.2d 196, 203 (Iowa 2008). A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law. *Id.*

### 1. Hybrid Representation.

■■■ In a state criminal trial, a defendant has a Sixth and Fourteenth Amendment right under the United States Constitution to self-representation. *State v. Martin,* 608 N.W.2d 445, 450 (Iowa 2000) (citing *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975)). Before the right to self-repre-sentation attaches, a defendant must voluntarily, clearly, and unequivocally elect to proceed without counsel by knowingly and intelligently waiving his Sixth Amendment right to counsel. *Hannan v. State,* 732 N.W.2d 45, 55 (Iowa 2007); *Martin,* 608 N.W.2d at 450. The court must inform the defendant of the dangers and disadvantages of self-representation before accepting the defendant's request to proceed pro se. *State v. Rater,* 568 N.W.2d 655, 658 (Iowa 1997).

■■■ To help avoid the pitfalls associated with self-representation, the court may elect to appoint standby counsel to assist a pro se defendant in his defense, even over the defendant's objections. *Martin,* 608 N.W.2d at 451. Although appointment of standby counsel is highly advisable when a defendant elects to proceed pro se, it is not constitutionally required. *Cooley,* 468 N.W.2d at 836–37. The purpose of standby counsel is to aid the defendant if and when he requests help, and to be available to represent the defendant should he desire to terminate his self-representation. *State v. Johnson,* 756 N.W.2d 682, 687 (Iowa 2008); *Martin,* 608 N.W.2d at 451.

■■■ The court, however, is not required to permit this form of hybrid representation where both the pro se defendant and standby counsel are actively participating as defense counsel at trial. *McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122, 136 (1984); *State v. Hutchison,* 341 N.W.2d 33, 41 (Iowa 1983) (determining a defendant has no absolute right to both self-representation and assistance of counsel). Because the court has discretion in deciding whether to appoint standby counsel, the court must also necessarily have discretion to place reasonable limitations and conditions upon the

arrangement. *Johnson,* 756 N.W.2d at 689; *Cooley,* 468 N.W.2d at 837.

▮ Mott argues the court failed to exercise its discretion because it did not hold a hearing on whether hybrid representation should be permitted and this failure amounted to abuse of discretion. In the alternative, if it is found that the court *did* exercise its discretion, Mott contends the court abused its discretion in allowing hybrid representation where (1) Mott and standby counsel did not agree upon trial strategy, (2) Mott did not respect standby counsel, and (3) standby counsel was afraid of Mott.

In this case, Mott insisted that he wanted to proceed pro se. He acknowledged that he would take standby counsel to assist him, so long as it was not someone from the public defender's office because he claimed he had experienced problems with public defenders in the past. After a lengthy colloquy to evaluate Mott's request to represent himself, the district court found Mott was aware of his right to be represented by an attorney and he had made a knowing, intelligent, and voluntary waiver of that right, and determined he was able to proceed pro se. The court also appointed standby counsel from the public defender's office to assist him.

Throughout discovery and pretrial hearings, a number of problems arose which eventually led to the court's revocation of Mott's pro se status. Mott uttered profanities, walked out of hearings prematurely, threatened the parties, called the parties and the judge names, swore at the judge, and made other inappropriate comments. Mott complained about wearing restraints while meeting with standby counsel and alleged that he and standby counsel were in conflict because he was required to wear the restraints. Mott was removed from hearings, and the court found him in con-

tempt several times and ordered him to serve time in jail.

At trial, the court attempted to allow Mott to assist in his defense by allowing him to write down questions he wanted standby counsel to ask each witness. However, Mott's own testimony ended early when he made inappropriate comments, and the court was forced to remove him from the courtroom when he made further comments during the State's closing argument. Mott made further inappropriate comments during the reading of the verdict and assaulted a detective as he was removed from the courtroom.

Upon our review of the record in this case, we cannot say the district court abused its discretion in allowing hybrid representation or in limiting Mott's right to proceed pro se. The court permitted hybrid representation after an adequate colloquy, repeatedly advised Mott on the disadvantages of following his personal trial strategy, and accommodated Mott's requests for control over his representation to the extent reasonably possible. We affirm on this issue.

### 2. Motions for Substitute Counsel.

▮ A defendant has a right to counsel at all critical stages of the criminal process. *State v. Boggs,* 741 N.W.2d 492, 506 (Iowa 2007) (quotations omitted). No defendant, however, has an absolute right to be represented by a particular counsel. *State v. Kirchner,* 600 N.W.2d 330, 333 (Iowa 1999). The grounds to justify the appointment of substitute counsel include a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the defendant and counsel. *Boggs,* 741 N.W.2d at 506; *Martin,* 608 N.W.2d at 449. The court must balance the defendant's right to counsel of his choice and the public's interest in the prompt and efficient administration of jus-

tice. *Hannan,* 732 N.W.2d at 55–56. The court has a "duty of inquiry" when it receives a request from a defendant for substitute counsel on account of an alleged breakdown in communication. *State v. Wells,* 738 N.W.2d 214, 219 (Iowa 2007). The defendant must show the grounds to justify substitute counsel and the court has considerable discretion whether to grant substitute counsel. *Boggs,* 741 N.W.2d at 506.

■ Upon our review of the record, we cannot say the district court abused its discretion in denying Mott's requests for substitute counsel. Mott's requests were based on his general complaints regarding his dislike of public defenders, the requirement that he wear restraints during meetings with counsel, and disagreements over trial strategy. Mott failed to establish sufficient cause to justify substitute counsel. He was given more than an adequate opportunity to voice his complaints to the court, and the court reasonably exercised its discretion in denying his requests for substitute counsel. We affirm on this issue.

### D. Pro Se Claims.

Through a pro se brief, Mott raises a jury instruction challenge and several evidentiary and ineffective assistance of counsel claims.

### 1. Jury Instruction.

■ Mott contends the district court erred in submitting a marshalling instruction on kidnapping for elements lacking sufficient evidence. We review challenges to jury instructions for the correction of errors at law. Iowa R.App. P. 6.4; *Rowling v. Sims,* 732 N.W.2d 882, 885 (Iowa 2007); *State v. McCall,* 754 N.W.2d 868, 871 (Iowa Ct.App.2008). In this review we determine if they are correct statements of the law and whether they are supported by substantial evidence. *McCall,* 754 N.W.2d at 871. When reviewing a claim that an instruction was not supported by substantial evidence, we view the evidence in the light most favorable to the party seeking the instruction. *Rowling,* 732 N.W.2d at 885. We will not reverse the district court unless prejudice results from an erroneous jury instruction. *State v. Fintel,* 689 N.W.2d 95, 99 (Iowa 2004). Prejudice results when the court's instruction "materially misstates the law, confuses or misleads the jury, or is unduly emphasized." *Anderson v. Webster City Cmty. Sch. Dist.,* 620 N.W.2d 263, 268 (Iowa 2000).

The marshalling instruction on kidnapping submitted to the jury in Mott's trial stated:

As to Count 1, Kidnapping in the First Degree, the State must prove all of the following elements:

1. On or about November 4–5, 2006, the defendant confined Lisa Floyd and/or removed Lisa Floyd from one place to another.

2. The defendant did so with the specific intent to:

a. Inflict serious injury upon Lisa Floyd; or

b. Subject Lisa Floyd to sexual abuse; or

c. Secretly confine Lisa Floyd.

3. The defendant knew he did not have the consent or authority of the victim to do so.

4. As a result of confinement or removal, Lisa Floyd suffered a serious injury and/or was intentionally subject to torture.

Mott contends the instruction was incorrect because there was not sufficient evi-

dence to give sexual abuse and secret confinement as alternative elements.[11]

Although a sex act did not occur, Mott ordered Floyd to strip, said he was going to rape her, and threatened to make her "suck his dick." Floyd also testified that Mott bit her breast and kicked her in the crotch. Further, Mott did not leave Floyd alone throughout the night, Floyd spent the night without her clothes on, and Mott ordered Floyd to lie still when people knocked on the door four times. Mott allowed Floyd to leave only after she persuaded him she needed medical attention for her eye and promised him that she would come back, that she would tell the hospital that she had been beaten up at QuikTrip, and that she would not call the police.

We cannot find that Mott was prejudiced by the jury instructions because substantial evidence supported all three alternatives of the kidnapping marshalling instruction. Finding no error, we affirm the district court with regard to this issue.

### 2. Evidentiary Issues.

▆▆▆ Mott raises evidentiary issues regarding psychiatric evidence and admission of his jail phone call recordings. First, Mott claims the district court erred in admitting psychiatric notes because the notes were inadmissible hearsay evidence. We review the admission of claimed hearsay evidence for correction of errors at law. *State v. Musser*, 721 N.W.2d 734, 751 (Iowa 2006). Upon our review of the record, we do not find that psychiatric notes were admitted into evidence. Further, statements made regarding the information contained in the psychiatric notes properly came in during Floyd's testimony as threats made by Mott. We therefore

find Mott's argument to be without merit. Finding no error, we affirm as to this issue.

▆▆▆ Mott next contends the improper admission of the psychiatric expert opinion deprived him of his right to due process. Mott argued the psychiatrist's testimony conveyed a conclusion regarding Mott's legal guilt. We conduct a de novo review of alleged constitutional violations. *State v. Decker*, 744 N.W.2d 346 (Iowa 2008). Upon our review of the record, we find that the psychiatric expert opinion was properly admitted. The psychiatrist diagnosed Floyd with posttraumatic stress disorder and opined that the condition was a serious debilitating mental condition. The psychiatrist did not, however, express an opinion on Mott's legal guilt or innocence. We find no error in the court's admission of the psychiatric testimony and affirm as to this issue.

▆▆▆ Mott further claims the telephone calls Mott made from jail were improperly admitted into evidence. He alleges the calls constituted work product from a period Mott was acting pro se. He further contends the State's opinion testimony regarding the content of the calls was improper. We review claims of error in the admission of evidence for abuse of discretion. *Boggs*, 741 N.W.2d at 499. As we noted above, an abuse of discretion occurs when the trial court exercises its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Parker*, 747 N.W.2d at 203. Upon our review of the record, we cannot say the district court abused its discretion in allowing recordings of telephone calls made by Mott from jail. Assuming the recordings were made after

---

11. The State contends Mott waived error on this ground by failing to object to the instruction at trial. Assuming, arguendo, that error has not been waived, we evaluate Mott's claim.

the court had approved Mott's pro se status, the recordings included Mott's general admissions and denials and did not include Mott's work product. Further, Mott was not prejudiced by the State's opinion testimony of the content of the calls when other similar evidence appeared in the record and Mott testified to the contrary when he took the stand. We affirm on this issue.

### 3. Ineffective Assistance of Counsel.

Mott argues his counsel was ineffective (1) in failing to object to the State's motion to amend the trial information and (2) in failing to make an active and zealous closing argument. Upon our review, we conclude the record is adequate to address Mott's pro se claims of ineffectiveness. We find these claims to be without merit.

### III. Conclusion.

Having considered all issues raised on appeal, we affirm.

**AFFIRMED.**