**IN THE COURT OF APPEALS OF IOWA**

No. 14-0215
Filed December 24, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEWAYNE PATTERSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clinton County, Mark R. Lawson,

Judge.


        A defendant appeals his conviction following an *Alford* plea, alleging

ineffective assistance of counsel.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney

General, and Michael Wolf, County Attorney, for appellee.


        Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

DeWayne Patterson entered an *Alford*[1] plea to third-degree kidnapping and other crimes in connection with conduct directed at his girlfriend, Mindi. On appeal, he contends his attorney was ineffective in failing to challenge the plea for lack of a factual basis. While we generally preserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings, our record is adequate to address the issue. *State v. Hallock*, 765 N.W.2d 598, 602 (Iowa Ct. App. 2009).

Ineffective-assistance-of-counsel claims require proof of a breach of essential duty and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In this context, an attorney breaches an essential duty if the attorney allows the defendant to enter an *Alford* plea to an offense for which there is no factual basis. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). To determine whether there is a factual basis, we examine "the entire record before the district court." *State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013). If the record does not disclose a factual basis, prejudice is inherent. *Schminkey*, 597 N.W.2d at 788.

Had the case gone to trial, the State would have been required to prove Patterson confined Mindi with the specific intent to inflict serious injury or to subject her to sexual abuse and with knowledge he lacked consent or authority to do so. *See* Iowa Code §§ 710.1(3), 710.4 (2013). The district court was required to have a factual basis for these elements, albeit, not proof beyond a reasonable doubt. *Finney*, 834 N.W.2d at 62.

---

[1] An *Alford* plea is a variation of a guilty plea where the defendant does not admit participation in the acts constituting the crime but consents to the imposition of a sentence. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

Patterson "submits there was no showing that he confined [Mindi] against her will and with the specific intent to inflict serious injury or to commit sexual abuse." To the contrary, the record is replete with evidence of confinement and intent to inflict both serious injury and sexual abuse.

Mindi spoke to a police officer about her relationship with Patterson and a summary of the interview is included in the officer's report attached to the minutes of testimony. She told him Patterson did not allow her to leave the home once they started living together.

The most recent series of abusive episodes was triggered by Patterson's anger about one of Mindi's Facebook communications. After learning of the communication, Patterson awoke Mindi by striking her in the face with closed fists. He continued to inflict blows and later smashed her cell phone, cutting off her ability to contact family or 911. *See State v. McGrew*, 515 N.W.2d 36, 39 (Iowa 1994) (confinement may exist if it "substantially increases the risk of harm to the victim" or "significantly lessens the risk of detection" (citing *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981))).

The abuse did not end here. Mindi gave police a written statement describing repeated punches to her head as well as forced sex. She wrote, "I knew I needed to find a way away from him and get out." Mindi moved from the bedroom to the bathroom, only to have Patterson follow her to the bathroom and "hurr[y]" her back into the bedroom. Later, she told Patterson she intended to go downstairs to fill a water jug. She hoped he would not follow her and she could "just run straight out the door of the house . . . and run for help." Patterson did follow her and hit and pushed her upstairs. While he watched television, she

again tried to go downstairs and leave the house. She was intercepted by Patterson again. She made an excuse for being downstairs, and Patterson returned to the bedroom.

Mindi took this opportunity to sneak out and go to the neighbor's house. The neighbor did not answer the doorbell. *See State v. Coen*, 382 N.W.2d 703, 713 (Iowa Ct. App. 1985) (finding fact that woman "was adroitly able to abort Coen's scheme does not change the nature of the confinement or removal").

Meanwhile, Mindi heard Patterson exit the back door of the house and start his car. She darted behind a tree until he left, then returned to the house to check on her infant son. Patterson came back, thwarting further attempts to escape with her son. Mindi wrote, "I have no vehicle so couldn't get very far on foot with my 9 month old son while trying to be quiet and keep him quiet trying to get out of the house without waking [Patterson] and having him catch us."

The next day, Mindi asked Patterson if she could go to the hospital because she was not feeling well. Patterson gave her permission to go, but without her son. Mindi wrote, "I couldn't leave, and wouldn't leave, without my son so I stayed at the house and did what he told me."

That night she called her parents, as she did every night, using Patterson's cell phone. She told her father Patterson beat her up and she "was waiting for the next time he left" to have him come get them. Her father came the next day of his own volition, but Patterson would not let Mindi answer the door. She advised the officers he went so far as to hold her down and "put his hand over her mouth" to prevent her from calling out. *See State v. Mott*, 759 N.W.2d 140, 150 (Iowa Ct. App. 2008) (finding substantial evidence supported

kidnapping instruction based on evidence "Mott ordered Floyd to lie still when people knocked on the door").

In the afternoon, Mindi convinced Patterson to go to the store for groceries. While he was gone, she called her father, who came and whisked mother and child away, just as Patterson returned.

Mindi was sent to a hospital. Professionals diagnosed her with subdural hematoma or bleeding in the brain.

The record contains a factual basis for confinement with intent to commit serious injury or sexual abuse. *See* Iowa Crim. Jury Instructions 1000.5 (stating a person is "confined" when his or her freedom to move about is substantially restricted by force, threat, or deception); *see also State v. Little*, No. 10-1642, 2011 WL 5399202, at *4 (Iowa Ct. App. Nov. 9, 2011) (stating jury could have found confinement based on brutal beating, threats to kill, and removal of means of communication with the outside world (citing *State v. Little*, No. 08-1125, 2010 WL 786011 (Iowa Ct. App. Mar. 10, 2010))); *State v. Strongheart*, No. 98-2155, 2000 WL 193515, at *2 (Iowa Ct. App. Jan. 26, 2000) ("Strongheart's confinement of his wife within their home ensured his horrific treatment of his wife would not be detected. Finally, the confinement substantially increased the harm suffered by Becky as every time she attempted to escape she was beaten into submission. . . . [H]is plea was supported by a factual basis."). Accordingly, counsel did not breach an essential duty in allowing Patterson to enter an *Alford* plea to third-degree kidnapping.

**AFFIRMED.**