# IN THE COURT OF APPEALS OF IOWA

No. 19-0834
Filed January 21, 2021

**HARLAN MOTT Jr.,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, Judge.

The applicant appeals from the denial of application for postconviction relief.
**AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., May, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**POTTERFIELD, Senior Judge.**

Harlan Mott Jr. was convicted of first-degree kidnapping in 2007, and he received the mandatory sentence of life imprisonment.[1] He challenged his conviction on direct appeal, and this court affirmed. *See State v. Mott*, 759 N.W.2d 140, 151 (Iowa Ct. App. 2008). Mott filed a pro se application for postconviction relief (PCR) shortly after—in January 2009. He was appointed counsel, and his amended application came on for hearing in 2019.[2] The district court denied Mott's application. He appeals.

Based on the evidence presented at the underlying trial, the jury could have found the following:

> Lisa Floyd met Mott through friends in late October 2006. Floyd saw Mott almost daily after they met and spent at least two nights at his home. On November 4, 2006, Floyd had the night off work and made plans to go out with Mott, Timothy and Martha Miller (Mott's nephew and his wife), and two other friends. The group met at Mott's and then rode in two cars to Prairie Meadows Casino. Floyd and Mott gambled and each drank about four drinks. From Prairie Meadows, the group went to a nearby truck stop for breakfast. After breakfast, Floyd and Mott rode with the Millers to the Brew Haus, a bar owned by Floyd's relatives, to continue drinking. The two other friends went home. The group left the Brew Haus when Mott punched a man in the face and knocked him to the ground for making a derogatory comment about the Millers' dancing ability. Mott was mad and blamed Floyd for the incident because her family owned the bar. Mott swore at Floyd and hit her in the ribs and the face as Floyd and Mott rode in the backseat of the Millers' car to Mott's house.

---

[1] Mott was also convicted of assault causing bodily injury. The district court determined this conviction merged with his kidnapping conviction.

[2] Mott has been represented by several different attorneys during the intervening years. In 2012, his PCR application was dismissed by default judgment after Mott, who was represented by counsel, did not appear at trial. We reversed the district court's ruling and remanded for trial on Mott's PCR application. *Mott v. State*, No. 12-1293, 2013 WL 5962908, at *1 (Iowa Ct. App. Nov. 6, 2013). After innumerable continuances, Mott's PCR application was heard more than a decade after it was filed.

The Millers dropped Floyd and Mott off at Mott's house, and Floyd got into her car to leave. As she backed out of the driveway, her car window exploded in her face and showered her with glass. Floyd quickly drove away, but stopped at a nearby QuikTrip to tend to her injuries. The Millers had also stopped at the QuikTrip, and Martha Miller went with Floyd into the QuikTrip bathroom. Soon Mott arrived at the QuikTrip and kicked the bathroom door open. He grabbed Floyd by her hair and said, "Let's go, bitch, now." Floyd went with Mott because she did not know what else to do. She did not think there was anyone that could help her and did not want to be hurt anymore.

She drove her car to Mott's house, with Mott following closely behind her in his car. Once they were inside Mott's house, Mott continued to beat Floyd, and she lost consciousness a couple times. Mott got on top of her, choked her, and told her he was going to kill her. Later, under Mott's orders, Floyd went to Mott's bedroom and undressed because Mott said he was going to rape her and threatened to make her "suck his dick." Instead of doing that, however, Mott unfolded a knife and threw it at Floyd twice. The first time the knife missed, but the second time the knife hit Floyd in her arm. Mott told her he was going to kill her and her children. Eventually Floyd lay down in bed, but she did not sleep. Mott got in bed next to her, but Floyd did not think he was sleeping.

The next morning Floyd heard people knock on the door four times, but Mott did not respond and ordered Floyd to lie still. Eventually Floyd persuaded Mott to let her leave to go to the hospital to get medical attention for her eye. She promised she would tell the hospital that she had been beaten up at QuikTrip and that she would not call the police. Floyd also promised she would return to Mott's house, and she left her bag of clothes there. Floyd received treatment at the hospital for her scratched cornea, broken ribs,[3] cuts,

---

[3] Mott maintains Floyd's medical records, which he introduced as exhibits in his PCR hearing, do not show that Floyd had broken ribs as a result of this incident and our court's prior finding is incorrect. The PCR court noted it would not consider broken ribs as part of Floyd's injuries.

We recognize the medical record from radiology finding "normal bones" after an x-ray of Floyd's chest. However, we also note another medical report that states, "If you had x-rays or blood tests, please note that these don't always show what's wrong. Sometimes x-rays don't show broken bones. After review by a specialist you will be notified if there is an abnormality." This disclaimer matches testimony from Mott's underlying trial. Floyd's cousin, Lisa Cline, testified, "I wasn't in the room when they view [the x-rays]. [Floyd] told me the doctor said that he couldn't see a break, but that if she had a hairline fracture, he wouldn't pick it up anyway and that the treatment was the same. There's basically nothing you can do." For purposes of this appeal, we will assume Floyd did not sustain broken ribs as a result of Mott's actions.

and other wounds. She did not tell the truth about what happened because she was scared of what Mott would do if she turned him in. Floyd's family was eventually able to persuade her to call the police later in the evening of November 5, 2006.

*Id.* at 143–44.

For the jury to convict Mott of first-degree kidnapping, the State had to prove:

> 1. On or about November 4-5, 2006, [Mott] confined Lisa Floyd and/or removed Lisa Floyd from one place to another.
> 2. [Mott] did so with the specific intent to:
> a. Inflict serious injury upon Lisa Floyd; or
> b. Subject Lisa Floyd to sexual abuse; or
> c. Secretly confine Lisa Floyd.
> 3. [Mott] knew he did not have the consent or authority of the victim to do so.
> 4. As a result of confinement or removal, Lisa Floyd suffered a serious injury and/or was intentionally subject to torture.

As to the final element of the crime, Mott contends the jury convicted him based on evidence that Floyd suffered from post-traumatic stress disorder (PTSD) as a result of his actions and its determination that PTSD was a "serious injury."[4] This evidence included testimony from Richard Joens, a clinical social worker who diagnosed Floyd with PTSD following the incident with Mott.

As he did to the district court, Mott contends his trial counsel denied him effective assistance by failing "to even consider pursuing an expert witness that might either call into question" Floyd's diagnosis of PTSD and whether it fit the legal definition of serious injury. For the first time, he also argues his PCR counsel

---

[4] The jury was instructed that a "serious injury" is
> disabling mental illness, a condition which cripples, incapacitates, weakens or destroys a person's normal mental functions, or a bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ.

denied him effective assistance by failing to obtain an expert witness to testify at the PCR hearing as to what he or she would have said to counter the State's expert at the underlying trial if trial counsel had sought their opinion. *See Dunbar v. State*, 515 N.W.2d 12, 16 (Iowa 1994) (allowing applicant to raise claim PCR counsel was ineffective for first time on appeal).

We review claims of ineffective assistance raised in a PCR proceeding de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). PCR "applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (citation omitted). Both elements must be proved by a preponderance of evidence, so we may affirm if either element is lacking. *See id.*

First, it is unclear whether Mott's underlying theory of his conviction—that he was convicted based on the jury's determination Floyd suffered from PTSD, which was a serious injury—is correct. It is possible the jury concluded the scar on Floyd's arm, which she got from Mott throwing a knife at her and then preventing her from obtaining medical treatment, was a serious injury. *See State v. Hanes*, 790 N.W.2d 545, 554 (Iowa 2010) (providing that while scarring is not a "per se serious permanent disfigurement," it is up "to the jury to determine whether a scar constitutes a serious permanent disfigurement" as included in the definition of serious injury). We also cannot rule out the possibility that the jury concluded Mott intentionally subjected Floyd to torture. The jury was instructed that "torture" means "the intentional infliction of several physical or mental pain." *See State v. White*, 668 N.W.2d 850, 857 (Iowa 2003) (deciding "torture" as used in first-degree

kidnapping "includes mental anguish unaccompanied by physical or sexual assault. In other words, 'torture' is either physical and/or mental anguish").

And second, even if his theory is correct, Mott has failed to establish his claims of ineffective assistance on this record. As he seems to recognize with his claim PCR counsel was ineffective, Mott cannot succeed on his claim that trial counsel breached an essential duty in failing to call an expert witness to challenge Floyd's PTSD diagnosis when Mott has failed to prove there is an expert who would have provided such an opinion in court. *See, e.g.*, *Stewart v. Nix*, 31 F.2d 741, 744 (8th Cir. 1994) ("To prove prejudice from a trial attorney's failure to investigate potential witnesses, a petitioner must show that the uncalled witnesses would have testified at trial and that their testimony would have probably changed the outcome of the trial."); *Cox v. State*, 554 N.W.2d 712, 715 (Iowa Ct. App. 1996) ("[The applicant] claims his trial counsel was ineffective in failing to call an expert to rebut the statement of the State's expert . . . . At the [PCR] hearing, [the applicant] presented no independent evidence to establish a contrary expert would exist. Absent such proof, he cannot prove prejudice. [The applicant] has not carried his burden of proof with respect to this claim."). For similar reasons, on this record Mott cannot prove his PCR counsel breached an essential duty that prejudiced Mott's PCR action. *See Jones v. State*, No. 02-0854, 2003 WL 22438596, at *2 (Iowa Ct. App. Oct. 29, 2003) (rejecting applicant's claim on appeal that PCR "counsel was ineffective in failing to produce expert testimony" because the applicant "makes no express assertion that such an expert opinion was available and could have been produced").

Because we do not know if an expert who would have challenged Floyd's PTSD diagnosis even exists, we cannot find fault with either trial counsel's or PCR counsel's representation for failing to obtain such a witness. *See State v. Lorenzo Baltazar*, 935 N.W.2d 562, 868 (Iowa 2019) ("[W]e presume the attorney competently performed his or her duties."); *Dunbar*, 515 N.W.2d at 15 ("When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job."). Mott's claims of ineffective assistance fail.

We affirm the district court's denial of Mott's application for PCR.

**AFFIRMED.**