# IN THE COURT OF APPEALS OF IOWA

No. 21-0045
Filed October 5, 2022

**DANIEL SAMUEL JASON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Kevin McKeever,

Judge.

Daniel Jason appeals the denial of his third application for postconviction

relief. **AFFIRMED.**

John L. Dirks of Dirks Law Firm, Ames, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee State.

Considered by Bower, C.J., Badding, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**DANILSON, Senior Judge.**

Daniel Jason appeals the district court's denial of his third application for postconviction relief (PCR),[1] contending his appellate and PCR counsel were ineffective.[2] Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

The specific factual bases of Jason's convictions are largely irrelevant for purposes of this appeal. In its ruling affirming the denial of Jason's first two PCR applications, our court set forth the following brief factual and procedural background:

> In 2007, Daniel Jason was convicted of simple assault and three counts of harassment concerning his unwanted actions toward his former girlfriend, C.C. A previously-entered no-contact order was extended for five years. "Contrary to Jason's declaration at [the] sentencing hearing that he would never contact [C.C.] again," he contacted her just hours after his release from jail. *See State v. Jason*, No. 14-1162, 2015 WL 6510334, at *1 (Iowa Ct. App. Oct. 28, 2015) (hereinafter *Jason II*).
> Jason's conduct toward C.C. persisted. In 2007, he was convicted by a jury of stalking in violation of a no-contact order and tampering with a witness. On direct appeal, this court affirmed his convictions but ordered a limited remand to apply *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008), to determine whether Jason "was competent to stand trial, but not competent to take on the expanded role of representing himself at trial." *State v. Jason*, 779 N.W.2d 66, 75–76 (Iowa Ct. App. 2009) [(hereinafter *Jason I*)]. The court also ordered resentencing, finding the district court "did not provide any reasons for its decision to impose consecutive sentences." *Id.* at 77.
> On remand, following a "meaningful hearing," the district court concluded Jason was competent to represent himself at trial.

---

[1] Jason's first two PCR actions (PCCV073198 and PCCV077747) were heard together before the district court and consolidated for appeal in *Jason v. State*, No. 17-1574, 2019 WL 2524118, at *1 (Iowa Ct. App. June 19, 2019) (hereinafter *Jason III*). His third application, PCCV079373, is at issue in this appeal.

[2] No issue has been raised relative to the statute of limitations in Iowa Code section 822.3 (2017) or the applicability of *Allison v. State*, 914 N.W.2d 866, 891 (Iowa 2018).

Meanwhile, separate from the hearing and court's decision, the parties stipulated Jason was competent to represent himself at trial and that his sentences should run concurrently. The court imposed concurrent sentences.

Upon his release from prison in 2012, Jason resumed contact with C.C. despite the no-contact order still in effect, "starting her ordeal all over again." *Jason II*, 2015 WL 6510334, at *2. In 2014, following a bench trial, Jason was convicted of stalking in violation of a no-contact order and two counts of extortion, enhanced as an habitual offender. On direct appeal, this court affirmed his convictions. *See id.* at *14.

Jason filed two postconviction-relief (PCR) applications: in 2011, he filed PCCV073198, challenging his 2007 convictions and 2010 sentence (a prerequisite for his subsequent habitual-offender enhancements); and in 2015, he filed PCCV077747, challenging his 2014 convictions. The two applications were consolidated, and a trial took place over two days in 2017. Thereafter, the district court entered a ruling denying Jason's applications.

*Jason III*, 2019 WL 2524118, at *1. On appeal, this court rejected Jason's various claims and preserved one claim for a potential future PCR proceeding. *See id.* at *2.

Jason filed this PCR application in late 2017, arguing his direct appeal counsel and initial PCR counsel were ineffective in failing to challenge the district court's order revoking his right to represent himself during his 2013–2014 criminal proceedings and sentencing.[3] Following a hearing, the PCR court entered an order denying the application. Jason appealed.

## II.    Standard of Review

"We generally review a district court's denial of an application for postconviction relief for errors at law." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021). However, our review is de novo "[w]hen the basis for relief implicates a violation of a constitutional dimension," including claims of ineffective assistance

---

[3] Jason was represented by defense attorney Mark Meyer in both proceedings.

of counsel. *Id.* (alteration in original) (quoting *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018)); *see Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

### III.    *Discussion*

To prevail on a claim of ineffective assistance of counsel, Jason must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).

Jason narrows his claim on appeal as follows: "[A]ppellate, and first PCR counsel ineffectively failed to raise [the claim that] Jason was competent to represent himself, and the trial court lacked a sufficient basis to revoke that right." The following facts are relevant to this claim.

As noted above, Jason represented himself at his 2007 trial.[4] In early 2013, Jason filed a motion to represent himself in his then-pending criminal proceeding.[5] Following a hearing, the district court granted Jason's request and also appointed standby counsel. Between March and July 2013, Jason filed seventy-eight motions with the court, "show[ing] a pattern of delay and obstruction." By late July, the court entered an order commenting, "Based upon Defendant's conduct and filings in this case since that time, I have serious doubts as to Defendant's maturity level to continue to represent himself and whether this lack of maturity allows a

---

[4] Jason subsequently argued the district court erred in allowing him to represent himself; that claim was eventually rejected. *See Jason I*, 779 N.W.2d at 75–76; *Jason III*, 2019 WL 2524118, at *1.

[5] This court discussed in detail the issue of Jason's invocation of his right of self-representation in *Jason II*, 2015 WL 6510334, at *2–4.

valid and intelligent waiver of his Sixth Amendment right to counsel to be entered."

The court referenced the following examples:

1. Defendant continues to file repetitious and spurious motions even after receiving adverse rulings on the same.

2. Defendant claims the Court is attempting to rocket docket his case to trial too quickly and then complains that a trial date is not set quickly enough. He alternates between demanding a trial now and asking for continuances. He openly acknowledges that he can stall this case till December (one-year speedy trial deadline). In a filing dated May 27, 2013, at 11:43 a.m., Defendant states, ". . . I got at least till December to stall the clock . . . ."

3. He refuses to follow the decorum necessary in court proceedings by refusing to stand for the Court at the start of a proceeding and at times talking over the Court and refusing to stop talking during hearings. He has engaged in name-calling and has referred to this Court as a corrupt court.

4. Defendant requested authorization for a mental health exam in support of his potential diminished responsibility defense (Counts II and III), which the Court granted. On June 27, 2013, he filed a handwritten document entitled Withdrawal of Request for MH Evaluation, which stated, "I withdraw the diminished responsibility defense. Please, let's have a trial, I'm ready."

At a hearing to verify his withdrawal of the diminished responsibility defense, Defendant denied filing the request for withdrawal, even though it is, obviously, his handwriting.

5. On July 17, 2013 at 8:42 a.m., Defendant filed the following motions:

(a) Motion for 5 Subpoenas Duces Tecum in which he refers to the Court as an idiot, sick pedophile and other derogatory terms;

(b) Motion for Change of Judge in which he makes sexual misconduct allegations about the Court;

(c) Letter in Support of Motion for Change of Judge in which he refers to the Court as a sick pedophile, uses grossly inappropriate language, and includes a sexually inappropriate drawing.

A hearing took place on this issue, after which the court made the following additional findings:

Defendant Jason initially claimed that, as a layperson, he should not be held to the same standard of conduct as a lawyer. He also claimed to be unaware that the well-established law in the State of Iowa is that the person representing himself pro se is held to the same standard of conduct as a lawyer.

Defendant Jason's alleged lack of awareness of this standard is not quite accurate, as he went through an extensive waiver hearing in his previous Johnson County stalking case (Johnson County FECR078976; appeal decision 779 N.W.2d 66 (Iowa Court App. 2009)), at which time Judge Hibbs explained to him that he would be required to comply with the Rules of Criminal Procedure and Rules of Evidence just like a lawyer.

Defendant Jason is aware of trial procedure and decorum, as he represented himself at trial in that case and was also prosecuted and convicted in the United States District Court for the Northern District of Iowa of the crime of Mailing Threatening Communications on or about December 2, 2010 (case number l:09-CR-00087- ERR).

He also justifies his inappropriate behavior by contending the Court is not ruling fast enough on his voluminous number of pretrial motions. As noted by the Court, many of these motions are repetitious, spurious and have no basis in either fact or law. From the content of the motions and sheer volume, it is obvious that Defendant's intent was to overwhelm the Court and cause delay. Between March 29 and May 1, 2013, more than 30 handwritten pretrial motions were on file. Between May 10 and May 17, 2013, Defendant filed an additional 17 motions, notices, and other filings. From May 30 through July 17, Defendant filed an additional 31 motions, notices, or other filings.

Defendant Jason openly acknowledges that he can stall trial of this case till December . . . . He promises to behave if Judge Baumgartner is assigned to his case and also states he will not accept Judges Dillard or Russell (see letter to Chief Judge Pat Grady file-stamped July 19, 2013, at 8:39 a.m. contained in sealed envelope).

I have detailed in numbered paragraph 2 of my July 23, 2013, Order Defendant Jason's claims that I am attempting to rocket docket his case to trial too quickly and then his alternating demands that trial be held right now. He has also made a game of requesting a mental health evaluation, withdrawing that request, and then reinstating the request for an examination.

On July 17, 2013, at 8:42 a.m. Defendant Jason filed three motions (Motion for 5 Subpoenas Duces Tecum, Motion for Change of Judge and Letter in Support of Motion for Change of Judge) in which he calls the Court an idiot, sick pedophile and other derogatory terms, makes wild sexual misconduct allegations about the Court and his court reporter, and uses grossly inappropriate language, including a sexually inappropriate drawing. He also made sexually explicit and derogatory comments concerning this Court's court reporter.

In the July 19, 2013, letter to Chief Judge Pat Grady, Defendant Jason indicates that he intends to make threats to Judge Miller in future court proceedings and do so in front of a jury.

Defendant Jason's apparent rationalization of these filings is that since he did not say these things to the Court's face, they cannot be used against him.

Defendant acknowledged in open court that he suffers from Asperger's Syndrome, which the Iowa Court of Appeals described in [*Jason I*, 779 N.W.2d at 75,] as follows, "Dr. Gersh . . . explained that Asperger's 'affects a person's ability to socialize and understand . . . nonverbal communication, cues, and to interact with people in a reasonable way, in social situations . . . .'"

The report of Dr. Olson offered into evidence by Defendant recommended "long-acting, injectable, antipsychotic medication" for treatment of Defendant Jason's condition. Dr. Olson also stated that Asperger's Syndrome "causes clinically significant impairment in social, occupational, or other important areas of functioning."

At today's hearing, Defendant Jason acknowledged that he was not currently taking any medication for this diagnosis.

The right to represent oneself can be lost due to Defendant's conduct (*see State* v. *Mott*, 759 N.W.2d 140, 148 (Iowa 2008); *Illinois* v. *Allen*, 397 U.S. 337, 339–44 (1970)).

In *Allen*, 397 U.S. at 343, the United States Supreme Court stated, "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case."

In *Faretta v. California*, 422 U.S. 806 (1975), the United States Supreme Court stated that self-representation does not give a Defendant the right to abuse the dignity of the courtroom or to avoid compliance with relevant rules of procedure and substantive law.

Based upon the record made today; the facts noted in my July 23, 2013, Order; the facts listed in this Ruling; Defendant Jason's conduct throughout these proceedings, and the content of the filings made by him in the court file and his admitted un-medicated mental health illness, I make the following findings:

1. I find that Defendant Jason lacks the maturity and judgment necessary to validly and effectively enter a knowledgeable and intelligent waiver of his Sixth Amendment right to counsel;

2. Although Defendant Jason is able to comprehend the legal issues involved in this case, his lack of maturity and judgment prevent him from possessing the functional abilities needed to conduct a defense of these criminal charges in a jury trial;

3. In the alternative, and in conjunction with numbered findings 1 and 2 above, I find that Defendant Jason (through his conduct) has forfeited the right to continue to represent himself in these proceedings.

Accordingly, the court rescinded and revoked its prior order allowing Jason to waive his right to counsel and represent himself.[6]

Jason did not appeal the court's order. Attorney Mark Meyer,[7] Jason's appellate counsel, later testified that when he first reviewed Jason's case to "analyze what issues appear[ed] to be the ones most likely to succeed," "two things jumped out at [him]": (1) the court's imposition of a 45-year sentence, which struck him as "kind of . . . unusual" and "disproportionate," and (2) the "fairly close relationship between the Judge ordering that [Jason's] shock belt be removed and [Jason] waiving his right to a jury trial," which he believed "was an issue that should be reviewed on appeal." With regard to the court's revocation of Jason's "hybrid representation," Meyer did not believe it "look[ed] like a good issue" to raise. Meyer explained:

> I'm familiar with standards relating to revoking—well, here's the thing. Daniel was representing himself in a hybrid situation so the question was was it proper for Judge Miller to revoke that status, whatever it was. And it appeared to me that there was no question that any way you slice it, Daniel engaged in seriously obstructive behavior, and there was no chance that any court on any level was ever going to find otherwise. So I thought it was—I didn't really give it—it wasn't an issue that I really ever seriously considered raising.

When pressed if he had researched and evaluated the issue, Meyer further stated:

> Sure. I mean, it was out there. The nice thing about them arguing and it succeeded is that it would be structural later and Daniel would get a new trial absent a showing of—without a showing of prejudice. But, you know, in my experience I've never

---

[6] We observe that at the outset of Jason's next appearance before the court just a few months later, he spoke to Judge Miller and made wholly inappropriate and abhorrent comments to the judge and his staff in an effort to seek Judge Miller's recusal.

[7] Meyer is an experienced defense attorney; he estimated he had worked on "[t]housands" of criminal cases.

encountered anyone who engaged in more obstructive behavior than Daniel did in all the time that I've been practicing, so it just wasn't an issue that seemed to have any merit whatsoever.

Meyer also testified that he believed if they had argued Jason had the appropriate judgment to represent himself, then it could "undermine" Jason's stronger argument that he was "not really capable of making important decisions regarding fundamental constitutional rights," i.e., waiving his right to a jury trial. According to Meyer:

> Yeah, I can see definitely to argue on one hand that he's perfectly capable of representing himself and Judge Miller errs in denying that on one hand, and on the other hand that, well, he's not really capable of making important decisions regarding fundamental constitutional rights on the other would be inconsistent.[8]
> Now, it's been said that inconsistency is a hobgoblin of small minds but, nonetheless, I think that either one argument tends to undercut the other, and since one didn't have any merit, the other one should be asserted.

In sum, Meyer believed "the argument didn't pass the smell test"; "It's just not an argument that I thought had any chance whatsoever to succeed given the conduct that Mr. Jason engaged in [before the court]. And, moreover, it tended to undercut the other argument that, you know, Daniel didn't voluntarily waive his right to a jury trial."[9]

Aside from Meyer's decision not to pursue a potential self-representation claim relating to Meyer's trial and sentencing, Jason also challenges Meyer's failure to pursue such a claim in his initial PCR proceeding. Specifically, Jason

---

[8] Meyer's hunch was well-founded. Even at this juncture, we are not persuaded by Jason's continued argument he "has an obvious mental illness which clearly limits his ability to exercise good judgment," but that he was competent to represent himself at trial.

[9] In light of his opinion on the issue, Meyer also declined to argue for Jason's self-representation at sentencing.

claims that in the PCR proceeding, Meyer "was constitutionally ineffective for failing to raise the issue of self-representation due to his conflict of interest." With regard to this issue, Meyer testified in his opinion the claim was still "a bad issue," but he acknowledged that "if some case came along [in between the direct appeal and PCR proceeding] and indicated conduct factually similar that concluded that, you know, the behavior that Daniel engaged in was not serious obstructive conduct, then I suppose that would change [his] mind" and he "would have to withdraw." Indeed, Meyer recalled that he had filed a motion to withdraw at Jason's request, but Jason later changed his mind:

> And then he wrote back and said, okay, well, you know, the trial is coming up here in a few months, I don't really want to change counsel, let's just go ahead, I'll waive my claim to ineffectiveness according to—or on the basis of self-representation. And so as soon as I got that email [from Jason], I then withdrew, apparently for the second time, the request to withdraw.

Meyer had then filed a motion withdrawing his motion to withdraw, stating in part:

> Applicant's counsel and provides notice that he no long moves to withdraw as Applicant's lawyer in each of these above cases. Mr. Jason has advised counsel that he no longer intends to claim that present counsel was ineffective when representing Mr. Jason on appeal, and that he wants counsel to remain as his attorney in these cases.

In sum, Meyer did not believe he had a conflict of interest in Jason's case, but he acknowledged, "I mean, if it—if something came up that appeared to be a conflict, then I would have a duty to withdraw."

On these issues, the PCR court found:

> Applicant claims that Mark Meyer as Appellant Counsel was ineffective for failing to raise on direct appeal the denial of Applicant's pretrial request to represent himself at trial made in July 0f 2013. The Applicant further claims that Mark Meyer was ineffective for failing to raise the denial of Applicant's post trial request to represent himself

at sentencing hearing in July of 2014. Applicant further claims that Mark Meyer as PCR counsel was ineffective for failing to raise both these issues in a post-conviction relief motion.

Attorney Mark Meyer testified that he identified the issues in this case and made conclusions regarding the issues he would most likely want to challenge. Those issues included the length of the sentence (45 years), the waiver of jury trial and the use of the shock coat. To Mr. Meyer, the evidence at the sentencing hearing stood out. The other evidence that stood out to Mr. Meyer was that his former client, Mr. Jason, had some difficulties while the case was pending to the point where Judge Miller ordered that at the time of trial he had to wear a shock coat. Mr. Meyer noted that there was a fairly close relationship between the shock coat being removed and the waiver of the jury trial. Mr. Meyer thought that these were the issues that should be reviewed on appeal. Mr. Meyer testified that he believes that Mr. Jason had a "hybrid" representation, or standby counsel. Mr. Meyer described this as Mr. Jason representing himself but he had the assistance of counsel. Mr. Meyer testified that on July 25th, the "hybrid" representation was revoked and counsel was appointed. On appeal, Mr. Meyer did not believe the revocation of self-representation issue was a good issue to explore. In Mr. Meyer's opinion, there was no way to overcome the fact that Mr. Jason had engaged in disruptive behavior. Mr. Meyer did not believe the issue of failing to challenge the Court's ruling revoking self-representation had any merit. Mr. Meyer also never asserted Mr. Jason's right to reclaim self-representation. Mr. Meyer has been practicing law since 1975 (45 years) and testified that he has never encountered anyone who engaged in more obstructive behavior than Mr. Jason. Therefore, he did not think that it was an issue with any merit.

In concluding PCR counsel did not fail to perform an essential duty, the PCR court

stated:

While there could be some disagreement regarding the strategy of focusing on the best claims vs. putting forth all claims regardless of how likely or unlikely they are to succeed, it is clear to the Court that attorney Mark Meyer had a reasonable strategy and followed it. Mark Meyer's performance was not below that of the normal range of competency one would expect from an attorney. Furthermore, Mark Meyer did not fail to perform an essential duty. The Court need not evaluate the prejudice prong but even if it did, the Court would conclude that the Applicant did not suffer any prejudice due to Mark Meyer's representation in either the PCR case or the appellate case.

On the issue of whether PCR counsel should have sought to reclaim his right to self-representation, the court concluded:

> On November 5, 2020, Daniel Jason filed a brief indicating that his attorney should be removed because he did not argue that Mark Meyer was ineffective for failing to assert his right to reclaim self-representation. The Court considers that argument and finds that the same conclusion should be reached. Furthermore, the Applicant's motion is moot because the post-trial brief filed by Webb Wassmer makes the same argument that the Applicant makes in his November 5, 2020, motion.
>
> In *Illinois v. Allen*, 397 U.S. 337 (1970), the United States Supreme Court clearly stated that after forfeiture of the right of self-representation due to misconduct, the right may "be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." . . . [T]he applicant has failed to prove that a failure to make these arguments rises to the level of counsel being ineffective. Given the record that the Court made when it revoked the self-representation and subsequently denied Mr. Jason's request to remove his attorney, it is highly unlikely that the District Court would have believed that [Applicant] was willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings. It is also inaccurate to argue that the previous Court failed to consider *Illinois v. Allen.* In its July 26, 2013, order revoking self-representation status, the Court cites *Allen.* The same judge made the ruling in the April 21, 2014, order and that order incorporated the reasoning of the July 26, 2013, order. . . .
>
> The Applicant has failed to prove by a preponderance of the evidence that Mark Meyer was ineffective either as appellate counsel or as PCR counsel. Accordingly, the Applicant's request for post-conviction relief should be denied.

On our de novo review, we conclude attorney Meyer employed a reasonable trial strategy in selecting what claims were the strongest and avoiding inconsistent claims. *See State v. Johnson*, 604 N.W.2d 669, 673 (Iowa Ct. App. 1999) ("Where counsel's decisions are made pursuant to a reasonable trial strategy, we will not find ineffective assistance of counsel."). "We need not reach

the prejudice prong as counsel performed competently." *Id.* We affirm the denial of Jason's third PCR application.[10]

**AFFIRMED.**

---

[10] Jason also contends he "is not required to demonstrate prejudice, because the error here is structural error," citing *Krogmann v. State*, 914 N.W.2d 293, 313, 322–325 (Iowa 2018). We need not decide if Jason falls under this analysis, because the PCR court did not need to reach that issue as Jason did not satisfy the first prong.